[Filed December 6, 1886.]
## J. R. E. SELBY *v.* CITY OF PORTLAND.

QUO WARRANTO—REVIEW—POLICEMAN—REMOVAL FROM OFFICE.—Where a policeman of the city of Portland is removed or suspended from office by the mayor and common council, upon insufficient cause, and another appointed in his place, he may maintain an action in the nature of a *quo warranto* against the intruder. *Quære,* whether in such case a writ of review would not lie, to obtain a reversal of the action of the mayor and council.

SAME—COLLATERAL PROCEEDING—TITLE TO OFFICE.—An action against the city by an officer so removed, for salary subsequently accruing, cannot be maintained until there has been an adjudication in a direct proceeding declaring him entitled to the office, and the incumbent a usurper.

MULTNOMAH COUNTY.   Plaintiff appeals.   Complaint dismissed.

*Yocum & Beebe* and *R. Williams,* for Appellant.

A *de jure* officer may sue, and recover his salary of a municipal corporation, although a *de facto* officer has performed the services and received the salary. (1 Dillon Mun. Corp., Sec. 235, 3d ed. ; *Douglas* v. *State,* 31 Ind. 435; *McCue* v. *County Wapello,* 10 N. W. Rep. 248 ; *Bryan* v. *Cattell,* 15 Iowa, 537 ; *Meagher* v. *Storey County,* 5 Nev. 199 ; *Dorsey* v. *Smyth,* 28 Cal. 21 ; *Stratton* v. *Oulton,* 28 Cal. 44 ; *People* v. *Potter,* 63 Cal. 127 ; *Philadelphia* v. *Given,* 60 Pa. St. 139; *Philadelphia* v. *Rink,* 2 Atl. Rep. 505; *Mathews* v. *Supervisors Copiah County,* 24 Am. Rep. 715; *Carroll* v. *Siebenthaler,* 37 Cal. 193.)   The provision of the charter that removals may be made for any cause which the mayor and common council deem sufficient, *to be stated in the order of removal,* must be strictly pursued, or no removal will be effected. (*People* v. *Thompson,* 94 N. Y. 451.)   The mayor and common council, in proceedings of this character, is an inferior tribunal, and its record must affirmatively show the facts conferring jurisdiction. (*Cooper* v. *Sunderland,* 3 Iowa, 123–125; *Morrow* v. *Weed,* 4 Iowa, 87, 123 ; *Wright* v. *Edwards,* 10 Or. 298, 304, 307; Church, Habeas Corpus, Secs. 266, 268,

479, 480; *Fitch* v. *Miller*, 28 Cal. 352; *State* v. *Covington*, 29 Ohio St. 102.) The appointment to an office when there is no vacancy is a nullity. The board of police can fill vacancies, but a vacancy must exist before it would have jurisdiction to appoint. (*State of Oregon, ex rel. Whitney*, v. *Johns*, 3 Or. 533; *State* v. *Towne*, 21 La. Ann. 490; *State* v. *Hamilton County*, 7 Ohio, 134.)

*A. H. Tanner*, for Respondent.

An officer may resign at any time; and the mere appointment of a successor, though informally made, acquiesced in voluntarily, would amount to a resignation. (*Johnson* v. *Wilson*, 2 N. H. 202; *State* v. *Allen*, 27 Ind. 516; *Van Orsdall* v. *Hazard*, 3 Hill, 243; *People* v. *Board of Police*, 26 N. Y. 316.) The right to the emoluments of an office in this country depends upon the performance of the duties, and not upon any vested right or title to the particular office in question. (*Smith* v. *Mayor*, 37 N. Y. 518; *McVeany* v. *The Mayor*, 80 N. Y. 185; *People* v. *Metropolitan Police*, 26 N. Y. 337; *Hadley* v. *Mayor*, 33 N. Y. 607.) The municipal authorities are justified in paying the person who is in possession of the office, and discharging the duties thereof. (*Dolan* v. *Mayor*, 68 N. Y. 274; *McVeany* v. *Mayor*, 80 N. Y. 185; *Stuhr* v. *Curran*, 15 Vroom, 181 S. C., 43 Am. Rep., 353; *Steubenville* v. *Culp*, 38 Ohio St. 18; *Attorney General* v. *Davis*, 44 Mo. 131; *Auditor* v. *Benoit*, 20 Mich. 176; *Terhune* v. *Mayor*, 88 N. Y. 247; *Commissioners of Saline Co.* v. *Anderson*, 20 Kan. 298.) And where an officer holds during pleasure, the appointment of another person to his place is a sufficient removal. (*Patton* v. *Vaughn*, 39 Ark. 211; *Ex Parte Henen*, 13 Peters, 141; *Story on the Const.*, Secs. 1538–1554; *Keenan* v. *Perry*, 24 Texas, 253; *Commonwealth* v. *Sliter*, 25 Pa. St. 23; 64 Am. Dec. 680.)

THAYER, J.—The appellant commenced an action in the circuit court of Multnomah County against the respondent, to recover an amount of salary alleged to be due him as a police

officer of said city, and for the salaries of some five other po-
licemen, which had been assigned to him. The appellant and
the assignors referred to had been regularly appointed chief of
police of said city, captain, and ordinary policemen thereof;
and each served in that capacity during a period of time.
While they were so serving, the mayor of the city attempted
to displace them, and appoint other policemen in their places;
and, as they claim, unlawfully prevented them from perform-
ing their duties as such policemen; and the action was brought
to recover their respective salaries after being so displaced, and
until the time of the commencement of the action. It appears
that the appellant was displaced March 18, 1885; his assignor
J. II. Lappeus, chief of police at the time, was displaced July
22, 1883, his assignor T. P. Luther, captain of police at the
time, was displaced August 2, 1883, and his assignors D. W.
Dobbins, J. E. Cramer and A. Johnson, regular policemen at
the time, were each and all displaced March 18, 1885. The
amount of all their salaries during the time claimed for aggre-
gates $15,625.

The respondent interposed the following matters of defense
to the complaint: That the salaries sued for were paid to parties
other than the appellant and his assignors, without any knowl-
edge on its part that they claimed the offices or the salaries;
that appellant and his assignors were removed from their offi-
ces, and acquiesced in the removal; that appellant and their
assignors abandoned the said offices, and neglected to perform
the duties pertaining thereto; and that the appellant and his as-
signors were duly dismissed and discharged from their offices.

The city charter in force at the time of these attempted re-
movals provided that the mayor, with the consent of a major-
ity of the common council, might appoint a chief of police, one
or more captains of police, and a suitable force of regular po-
licemen; and remove or suspend any member of the police, in-
cluding the chief and captains, for any cause which they might
deem sufficient, to be stated in the order of removal or sus-
pension. (Charter, 1884, Chap. 8, Sec. 72, and the prior char-
ters of the city.)

It was not claimed in the case that the mayor, with or without the consent of the majority of the common council, had removed or suspended the appellant and his assignors beyond this : The mayor had, in certain messages to the common council, announced in each case that he had appointed a person to the same position they held, and generally stated that it was in the place of the one he intended to supersede; and requested the common council to confirm the appointment, which was done by a majority vote thereof in each of the cases. There was no cause stated for the removal, nor any order made in regard to it, unless the mayor's communication can be deemed such order. Upon the trial of the action in the circuit court, the judge thereof presiding ruled out all the defenses of the respondent, except that of the abandonment of the offices by the appellant and his assignors. That question the judge permitted to go to the jury, and instructed them that if they found from the evidence that these parties did in fact abandon their offices, they would find for the respondent; whereupon the jury returned a general verdict in favor of the respondent and against the appellant, and upon which the judgment appealed from was entered.

To the instruction referred to the appellant's counsel took an exception, which is the main point relied upon in the case. Whether the instruction was correct or not, depends upon the evidence bearing upon the question of such abandonment. The appellant's counsel claimed that there was no evidence tending to prove an abandonment upon the part of the appellant and his assignors of the said offices; and I confess that I was very skeptical as to the probability of there being any such evidence. I presume instances have occurred in which officers have abandoned their offices, but they have been so rare that it requires cogent proof to establish them as matters of fact. An officer, doubtless, might legally abandon his office when wrongfully ousted therefrom; his permanent removal from the territorial jurisdiction of the office would necessarily have that effect ; but his failure to keep up a clamor for reinstatement could not certainly be urged as evidence of abandonment.

The mayor, with the consent of a majority of the common council, had the appointment of these officers, and could remove or suspend them. He, with the consent of that body, did appoint other persons to supersede them, and they were formally installed and remained in these positions. What, therefore, could the appellant and his assignors do in the premises, but submit to the action of these officials, or institute legal proceedings to annul their acts? I have read the testimony contained in the bill of exceptions, and do not think it tends to show an acquiescense in the removal, or abandonment of the offices by the appellant and his assignors—do not find that they ever proposed to relinquish them. It appears that the most that can be said in regard to their conduct is, that they did not attempt to contend about going out of their places, or about being let in again. There is certainly nothing to show that they relinquished any right, or did anything to estop them from claiming the offices. If the mayor and common council had offered to restore them, and they had refused such restoration, there would be grounds upon which to claim an estoppel; but, as the case stood, I am unable to discover that there was any such ground.

But the respondent's counsel contends that the mayor and council had the right to remove appellant and his assignors from the offices held by them, without cause stated in the order of removal; that such office belongs to the class provided for in Sec. 2, Art. 15 of the constitution of the state, and is to be " held during the pleasure of the authority making the appointment." It is questionable who " the authority making the appointment " is in this case. The authority itself is derived from the legislative department of the state, and the mayor and common council are restricted in the manner of its exercise; and the question is, Whose pleasure is to be consulted —the legislative, or mayor and common council? The latter are intrusted with the appointment, but the authority emanates from the former, and it has expressed its pleasure by requiring the mode in question to be pursued when the authority is exercised. The mayor and common council are mere agents in

the matter, and I think, beyond question, are subject to any restrictions their principal may deem proper to impose.  I cannot see that the authority to remove or suspend policemen could have been exercised without a special cause, which was required to be stated in the order of removal or suspension. The provision is a salutary measure, and should be observed with strictness.

It looks very much to me as though the public confidence was abused in the transaction, and that the appellant and his assignors were shamefully trifled with ; but it occurs to my mind that they neglected to take proper steps in the matter, and have lost the remedy they could have invoked successfully. They might have commenced an action in the nature of a *quo warranto* against the persons designated to succeed them, and been reinstated in their positions : or, probably, they might have sued out a writ of review, obtained a reversal of the action of the mayor and common council in the affair, and been restored to their positions in that way.  It was held by the court of appeals in New York, in *Fitzsimmons* v. *City of Brooklyn,* 102 N. Y. 536 (S. C. 7 N. E. Rep. 787), where a policeman of that city, who had been duly appointed to that office and entered upon the performance of his duties, was attempted to be removed by the police commissioners, and upon certiorari, the order of removal was reversed, and he was restored to his office, that he could recover against the city his salary which accrued between the time of the order of removal and the restoration, and without any abatement on account of earnings realized from his former trade, resumed during the interim. Under that decision, these parties could possibly have recovered their salaries after a successful prosecution of a writ of review. I cannot, however, believe that they can maintain an action therefor while other parties occupy their places, have qualified as policeman, and are recognized by the city government as such.  It seems very evident to me, that their right to the office would have to be judicially determined in a proper proceeding, before such an action could be sustained.

The appellant's counsel have cited a number of authorities

to show that an action of the character of the one in question can be maintained; but not one of them, as I can discover, was in a case where the plaintiff had been put out of office and another person been formally installed, and was in the discharge of the duties thereof, unless there had been an adjudication in a direct proceeding, declaring him lawfully entitled to it, and the incumbent a usurper.

The appellant's counsel claim that the salary is attached to the office, and does not depend upon contract. It is fixed by law. But it does not follow that the title to the office can be tried in a collateral action. Dillon, in his work on Municipal Corporations, 3d ed., Sec. 831, says: "Thus the salary or fees of an officer of a municipal or public corporation may, like other debts, be recovered by an action at law against the corporation. This, ordinarily, is the remedy, and not *mandamus;* but if the officer cannot sue the corporation, he may, where entitled, compel payment by means of this writ, unless another is in possessson under color of right; in which case the title to the office cannot ordinarily be determined on mandamus, or in a collateral proceeding."

It may be said that the action of the mayor and common council in the premises was a flagrant violation of the law, and of the rights of these officials; but, nevertheless, other persons were nominated in their places, confirmed by the common council, took the oath, were regularly inducted into their places, and became officers *de facto* in their stead. The title to the office had to be tried, as preliminary to the right of action which could have been brought in the lowest court of the state having civil jurisdiction. The parties ousted could, as their salaries accrued monthly, have sued therefor in a justice's court, whose jurisdiction to try the title to the office would have to be conceded, the same as that of the circuit court, under the same form of action, not only in cases where the question as to the title is a simple one, but where it is complicated and doubtful. Courts will not entertain a case in favor of a party to recover for the use and occupation of real property against one who is in possession thereof adversely, but remit such per-

son to his remedy by ejectment; and I think there would be less reason for entertaining a case of the character of the one in question than in that referred to. To allow an officer in such a case to remain wholly passive for a term of years, and then bring an action and recover the amount of his salary, which had been all the time accumulating, without attempting to dispossess the incumbent, would result in a pernicious practice, and tend to overturn a well-established rule of law regarding the trial of the right to an office. No precedent for such a course has been furnished.

It has long been a mooted question, whether the payment of a salary, or fees, or emoluments of an office to a *de facto* incumbent would exonerate the government or political body from the payment thereof to the *de jure* officer. Numerous authorities have been cited upon both sides of that question, though it is not before the court as the case stands. Those cited by the respondent's counsel go, in the main, to show that it will not. They maintain that the compensation is attached to the office, and carry it out to its logical sequence by holding that the salary must be paid to the *de jure* officer; while the ones which maintain the contrary doctrine generally concede that the salary is attached to the office—yet hold that the disbursing officer is not compelled to look beyond the certificate of election or appointment of the person who is in the discharge of the duties, and that payment to such party discharges the obligation of the political body in regard to the matter; but neither class of cases sanctions the right of the *de jure* officer to recover the salary while out of possession of the office, until he obtains a determination of a competent tribunal in favor of his title, in a direct proceeding instituted for that purpose.

*Dorsey* v. *Smyth*, 38 Cal. 21, one of the cases cited by the respondent's counsel, was an application for a mandate to compel the county auditor of Tuolumne County, California, to audit and allow the salary of the relator as district attorney of said county. He had been kept out of office by an intruder, who held it under color of office. The court granted the writ, but, before the application was made, the relator had instituted

a contest for the office against the incumbent, and had obtained a decision of the Supreme Court of that state, that he was entitled to it of right.

*Douglass* v. *State*, 31 Ind. 429, another of the cases, was a direct proceeding under the statute of the State of Indiana upon the relation of Wright against Douglass, in which the latter was charged with having usurped the office of auditor of Harrison County, in that state. It was to try the title to the office, and recover the fees and emoluments thereof, as incidental to the proceeding.

*City of Philadelphia* v. *Rink*, 2 Atl. Rep. 505, another of the cases, was an action brought by Rink against the city to recover his salary as magistrate thereof. One Barr had intruded into the office, and held it for some time under color of office. Rink was allowed to recover for full time, but before the action was commenced, his right to the office had been determined by the Supreme Court of Pennsylvania, in a direct proceeding instituted for that purpose.

*Carroll* v. *Siebenthaler*, 27 Cal. 193, another of the cases, was a mandamus, upon the relation of Carroll, to compel the board of supervisors of Amador County to allow his salary as supervisor of a district of that county, to which one Ingalls had been declared elected, and for some time had held the office. The writ was allowed, but Carroll had commenced the suit to try the right to the office, and had obtained a decision in his favor, before the mandamus proceedings were begun.

*People* v. *Potter*, 63 Cal. 127; *Meagher* v. *County of Storey*, 5 Nev. 244 ; *Matthews* v. *Supervisors of Copiah Co.*, 24 Amer. Rep. 715, and *City of Philadelphia* v. *Given*, 60 Pa. St. 136 —four other of said cases—merely hold that a *de facto* officer cannot recover compensation for services while occupying the office, a point upon which none of the authorities disagree, as I am aware of.

*Mayor etc. of Memphis* v. *Woodward*, 12 Heisk. 499, another of the cases, was a suit by the latter party against the former, to recover a salary as physician to the city hospital,

an office created by law for said city.  Woodward had been chosen to the office, and the mayor went, in company with him, to Lynch, the former physician, to turn over the office to Woodward.  Lynch asked for time in which to arrange his affairs, and it having been granted him, he employed it in suing out injunctions to restrain the mayor and Woodward from interfering with him in the enjoyment of the office.  The chancellor perpetuated the injunction, but the Supreme Court of the state dissolved it, and held that Woodward was entitled to the office, and the suit for the salary was not commenced until after that decision was rendered.  Under the circumstances, a recovery was had in favor of Woodward for the salary during the time he was deprived of the office.

*Mayor etc. of Macon* v. *Hays*, 25 Ga. 590, another of the cases, was an action to recover compensation as city marshal. That case was tried several times, and will be found reported in 19 Ga. 468, and 21 Ga. 280 ; and whether it has ever yet been determined or not I am not advised.  The right to institute such an action was conceded, although the marshal had been removed from the office by the mayor and common council of the city ; but he had, before its commencement, obtained a judgment of the Supreme Court of the state quashing their proceedings in the matter.

*Dolan* v. *Mayor*, 68 N. Y. 274, another of the cases referred to, was an action to recover a salary as assistant clerk of the district court for the sixth judicial district in the City of New York, and the plaintiff was allowed to recover for a portion of time during which he had been excluded from the office by another party who was holding under color of office, but not for any portion of the time covered by payment to the *de facto* officer ; nor was the action to recover the salary commenced until after judgment of ouster was obtained against the incumbent in *quo warranto* proceedings.

*Bryan* v. *Cattell*, 15 Iowa, 538, is also cited by the respondent's counsel.  That was a proceeding by mandamus, to compel the auditor of the State of Iowa to issue to the plaintiff in the proceeding warrants on the state treasurer for the salary of

the plaintiff as district attorney for the fifth judicial district of said state, claimed to be due him for the quarter ending the first days of April, July, and October, 1862. The plaintiff had been duly elected to said office for the term of four years from the first day of January, 1859; but in July, 1861, he was commissioned a captain in the volunteer service of the United States, for three years, or during the war; was mustered into the service, and so continued until after the mandamus proceeding was instituted. The auditor refused to issue the warrants, upon the ground that the plaintiff was absent from the state during the whole period for which he claimed the emoluments of the office; and it was contended that he forfeited his office by engaging in a service incompatible with its duties. The court held that the plaintiff did not, by his enlistment in the service, forfeit his office, and that the salary was attached to it, and allowed the writ. It does not appear that any attempt was made to appoint another person to the office during the plaintiff's absence, or that there was any contest regarding it. The only question the court had to decide in the case was, whether the plaintiff's engagement in the military service, under the circumstances, operated *ipso facto* as a forfeiture of it; and when it was determined that it did not, the court had no alternative but to decide that he was entitled to the salary.

None of the cases referred to indicate that an action to recover the salary of an office could be maintained while occupied by a *de facto* officer, until the right to the office has been determined by proper adjudication. Such a determination could not properly be had in this case, as it would determine the rights of parties not before the court. It would be a determination that the incumbents who succeeded the appellant and his assignors were intruders and usurpers, when they were not before the court. Upon this ground, the appellant was not entitled to recover, and the circuit court should have dismissed the complaint, instead of trying the case upon the merits. To that extent, the judgment appealed from will be modified. Costs will not be allowed to either party upon this appeal.