DANFORD JOHNSON vs. JOHN E. KIMBALL & others.

Worcester.   October 6, 1897. — January 5, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Veterans' Preference Act — "Labor Service of a Town."*

A janitor of the Memorial Hall of the town of Oxford is not in the labor service of the town, within the meaning of § 6 of St. 1896, c. 517, entitled "An Act relative to the public service of the Commonwealth and the cities and towns thereof, and the employment of veterans therein."

FIELD, C. J.   This is a petition for a writ of mandamus to compel the respondents, as selectmen of the town of Oxford, to appoint the petitioner janitor of the Memorial Hall in that town, on the ground that he is a veteran within the provisions of St. 1896, c. 517, entitled "An Act relative to the public service of the Commonwealth and the cities and towns thereof, and the employment of veterans therein."   The petitioner also seeks to compel the respondents to establish rules and "take such action as may be necessary to secure the employment of veterans in the labor service" of said town "in preference to all other persons, except women," pursuant to the provisions of § 6 of that statute.

The case was reserved upon the petition, answer, and agreed statement of facts.   It appears that the petitioner had been janitor of the Memorial Hall in Oxford in 1893 and 1894, and was last "appointed in March, 1897, to fill an unexpired term." A town meeting was held on April 5, 1897, at which it is to be inferred the respondents were elected selectmen.   On April 10, 1897, the petitioner made application to the respondents to be appointed janitor, and "cited the veteran's law in support of his application."   After that, on April 30, a hearing was had before the respondents as selectmen, and the respondents refused to appoint the petitioner, and appointed Patrick Foster janitor, who is not a veteran.   On May 1, they gave notice to the petitioner as follows:

"Office of Selectmen, Oxford, Mass., 1 May, 1897.   Mr. Danford Johnson, Oxford, Mass.   Sir, — Your term of office as

Janitor of Memorial Hall has expired by limitation. You are hereby directed by the Board of Selectmen to deliver the keys of said hall to Mr. Patrick Foster, your successor in office. Respectfully, John E. Kimball, Chairman."

It seems that what is called the office of janitor of Memorial Hall is regarded as having a term which runs from May 1 in each year to May 1 of the following year.

It is agreed as follows: " That the salary of the janitor has been two hundred dollars ($200) a year. That the janitor orders the wood, coal, and oil, lights and lets the hall for all entertainments, and collects the pay therefor and turns the money over to the treasury. The janitor is appointed by the selectmen. The civil service act had not been adopted in Oxford, nor had any civil service rules been adopted or promulgated." It appears also from the allegations of fact in the answer, which on this reservation must be taken to be true, " that there is no such office created by by-law, or by vote of the town, as janitor of Memorial Hall, and that the selectmen are in charge of Memorial Hall, and the janitor is their agent." In the petition the hall is referred to as the " Memorial or Town Hall," and it was in effect conceded at the argument that the hall was used as the Town Hall, and when not used for town purposes was often let for hire to private persons for meetings, entertainments, and exhibitions. It is not alleged that the town of Oxford has " a population of twelve thousand inhabitants or over," and perhaps we may take judicial notice from the census that its population is much less than twelve thousand.

St. 1884, c. 320, authorized in § 2 the commissioners appointed pursuant to § 1 to prepare rules " for the selection of persons to fill offices in the government of the Commonwealth, and of the several cities thereof, which are required to be filled by appointment, and for the selection of persons to be employed as laborers or otherwise in the service of the Commonwealth and of the several cities thereof," but no authority was given to prepare rules for the selection of persons to be appointed to office, or to be employed as laborers or otherwise in the towns of the Commonwealth. By St. 1894, c. 267, the statute of 1884 was made applicable " to all towns of the Commonwealth having a population of twelve thousand inhabitants or over," provided the act was

accepted " by a majority of the legal voters of said town present and voting thereon at a town meeting called for the purpose." By St. 1896, c. 449, it was provided that so much of the St. of 1884 and its amendments " as relates to the employment of laborers by cities, and that portion of the civil service rules of the Commonwealth and the cities thereof as authorized by said acts, and designated therein as the ' Labor Service ' shall not take effect in cities of less than one hundred thousand population, except upon acceptance by the city council of such city, with the approval of its mayor; provided that the city council of such cities shall establish rules under which veterans of the late war of the rebellion shall be given the preference in employment."

Under these statutes the civil service commissioners, with the approval of the Governor and Council, have established certain rules, which rules have been reported to the General Court annually, pursuant to St. 1884, c. 320, § 2. By these rules the offices and places to be filled under the rules are classified in two divisions, " the first to be known as ' The Official Service of the Commonwealth and the several cities thereof '; the second as ' The Labor Service.' " In the first division the word " cities " is construed so as to include any town which has accepted St. 1894, c. 267, and in this division, according to the classification made by the commissioners, are included engineers, janitors, and persons having charge of steam boilers and furnaces in the school buildings in the city of Boston (St. 1889, c. 352), and engineers, janitors, and persons having charge of public school buildings heated by other means than direct furnace or stove heat " in any city except Boston, and in any town accepting the provisions of chapter 267 of the Acts of the Legislature of 1894, after the school committee of such city or town shall have requested the commissioners to include such force in the classified service."

Under the second division, which is " The Labor Service," the commissioners have established two schedules, known as Schedule C and Schedule D, and it is provided that " Schedule C shall include all male laborers and mechanics in the employ of the city of Boston, to be designated as the labor service of the city of Boston. Schedule D shall include all male laborers and me-

chanics in the employ of each of the other cities of the Commonwealth, or of any town accepting the provisions of chapter 267 of the Acts of the Legislature of 1894, to be designated as the labor service of such city or town." It will thus be seen that there are no civil service rules established by the commissioners which are applicable to such a town as Oxford, and no civil service rules applicable to janitors of memorial or town halls in any city or town unless such a janitor is regarded as a laborer or mechanic, and that janitors of school buildings are not included by the commissioners in the labor service.

St. 1896, c. 517, in §§ 2 and 3, refers to the classification made by the civil service commissioners under the St. of 1884 and its amendments. Section 5 of this statute is as follows: " No veteran holding an office or employment in the public service of any city or town of the Commonwealth shall be removed or suspended, or shall without his consent be transferred from such office or employment, except after a full hearing before the mayor of such city, or before the selectmen of such town, and at such hearing the veteran shall have the right to be present and to be represented by counsel. Such removal, suspension, or transfer shall be made only upon the written order of the mayor or of the selectmen." It is not contended by the petitioner that he has been removed from any office or employment, because it seems to have been considered by him and the selectmen that his term expired on May 1, 1897. Besides, on April 30 the selectmen gave him a hearing, at which he was present and was represented by counsel. The petitioner relies upon § 6 of the statute, and contends that it was the absolute duty of the board of selectmen to appoint him janitor from May 1, 1897, as no other veteran had made application for the position. The first part of this section apparently has been regarded by the commissioners as not applicable to towns having a population of less than twelve thousand, and they have made no rules for such towns. The petitioner, as we understand, relies upon the following clause of this section: " In towns and cities in which the civil service act and the rules of the civil service commissioners have not been applied to the labor service, the selectmen of the towns and the city councils of the cities shall take such action as may be necessary to secure the employment of veterans

in the labor service of their respective towns and cities, in pref-
erence to all other persons, except women." If this clause
means by labor service the labor service according to the classi-
fication made by the rules of the civil service commissioners in
existence when the St. of 1896 took effect, or when the peti-
tioner made his application and it was refused, a janitor of a
memorial or town hall who performs such duties as are shown
in this case is not, we think, in the labor service. Such a
janitor undoubtedly is not a public officer, and it is doubtful
whether he could be regarded as a laborer engaged in the service
of the town, according to the customary meaning of that word;
certainly, as we think, he cannot be so regarded according to the
classification made by the civil service commissioners. Constru-
ing the different parts of the section one with another, we are of
opinion that by labor service, as the words are used in St. 1896,
c. 517, § 6, the Legislature intended the labor service as defined by
the rules of the civil service commissioners. Those rules are not
directly applicable to the labor service of such a town as Oxford,
but the Legislature intended that in such a town the selectmen
should take such action as may be necessary to secure the em-
ployment of veterans in the labor service of the town, with the
same preference in their favor as is secured to veterans in cities
and towns to which the civil service statutes and rules have
been applied, and that the kinds of employment which should
be included in the labor service should be the same in both
cases.

The selectmen are required to "take such action as may be
necessary" to secure the employment of veterans, etc. We
express no opinion whether so indefinite a provision can be
regarded as mandatory and one to be enforced by the court, or
whether, if it can be enforced by the court at least to the ex-
tent of compelling the selectmen to take some action under it,
it can be enforced on the complaint of a veteran who has no
private interest in having it enforced distinct from that of vet-
erans generally.

*Petition dismissed.*

*W. A. Gile,* for the petitioner.

*W. S. B. Hopkins,* (*F. B. Smith & W. S. B. Hopkins, Jr.* with
him,) for the respondents.