MORSE, WILLIAMS, AND COMPANY *vs.* EDWIN W. ELLIS
& another.

Worcester.    October 7, 1898. — January 6, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Mechanic's Lien — Exceptions — Trial — Finding.*

No exception lies to the refusal to give a ruling which involves a question of law immaterial in view of the facts as determined by the justice, sitting without a jury.

If the state of the evidence at the trial of a petition to enforce a mechanic's lien, under Pub. Sts. c. 191, is such that upon the questions involved the justice, sitting without a jury, is justified in finding either for the petitioner or the respondent, and finds for the latter, his action cannot be disturbed or reversed.

PETITION to enforce a mechanic's lien, under Pub. Sts. c. 191, for labor performed and materials furnished in the construction and installation of two freight elevators in a building in Athol, alleging that the petitioner ceased to perform and furnish such labor and materials on June 2, 1897. Trial in the Superior Court, without a jury, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

The petitioner, a corporation engaged in the business of making and installing elevators, on February 16, 1897, contracted with Edwin Ellis and Son, a firm consisting of Edwin W. Ellis and Lois L. Ellis, to furnish and erect in the Ellis Mill in Athol, to be used by them, two elevators according to specifications in the contracts, one of which was to be new and to cost $350, and the other to be second hand, but of latest pattern and in good order and condition, and to cost $250.

The work having been completed, the petitioner filed a certificate for a lien on July 1, 1897, claiming the contract price of $600 to be due, less certain credits and plus a charge of $4.50 for extra cable locks furnished.

From the evidence it appeared that the Ellis Mill was a new erection, built on the same spot in Athol as a former structure used for a similar purpose, viz. as a sash and blind factory; that Lois L. Ellis was the owner of the mill and the land upon which

it stood, and upon which the lien was claimed, and rented the same to the firm at a fixed price per month; that she was also a partner in the firm of Edwin Ellis and Son, which operated the factory, owning a one half interest, her copartner being her son, Edwin W. Ellis, who had the management of the business, and the care of equipping and rebuilding the mill; that she supposed she was a special partner, but the fact was not established by evidence; and that a contract to furnish elevators was made orally in February, 1897, by one Maclary, the petitioner's Boston superintendent, with Edwin W. Ellis for the firm, and the contracts before referred to were forwarded to Athol.

It was not shown by the petitioner that Lois L. Ellis had any actual or personal knowledge of the making of the contract for the installation of the elevators, or knowledge that the elevators were installed, or that any notice was given to her, as the owner of the property, of the intention of the petitioner to claim a lien for materials before the same were furnished.

It also appeared that the petitioner had the elevators installed so that they could be run, and they were running, as early as March 24, 1897, on which date a bill for the contract price was rendered by the petitioner; that on May 6, 1897, two entire new bushings (which are the inside linings for the pulleys that run on the shafts) were put in, the former bushings being reported to the petitioner by its workman to be loose; and that work was done in June, 1897, after the receipt by the petitioner of the following letter, caused to be written by Edwin W. Ellis, dated May 28, 1897: " We wish you would either send a man up here to fix our small elevator so that it will work or take it out and put in a new one. It has never worked satisfactory and we would like something done about it at once."

It further appeared that the elevators consisted of hoisting machinery bolted to the ceiling, and of a platform that rises and falls in the mill as the machinery is set in motion, and which runs through openings in the floor and is held in place by guide posts nailed securely to the building; that the openings in the floors were closed by automatic hatch doors; that Edwin Ellis and Son were to furnish all help and also lumber for the guide posts, machinery stops, and patent doors; that the lumber was nailed to the building; that there was considerable labor in preparing

the guide posts and lumber; and that all was done under the superintendence of the petitioner.

D. B. Maclary, the petitioner's superintendent, testified that the last work he did was on June 2; that the respondent Edwin W. Ellis stated to him that the elevators were placed in the mill for taking the stock up and down; that the elevator platforms were to be made a special size for some particular stock; and that these elevators were specially adapted to this building, and formed a part of the building.

On cross-examination, the witness testified that, at the time he made the oral contract with Ellis, he did not know who composed the firm, and did not know anything about the ownership of the real estate or plant; that it would be impossible to take out the guide posts without damaging them considerably, but the guide rail could be taken out; and that the elevators could be removed, but he would not say that it could be done without damage to the building or to them.

Frank H. Nowell, a workman in the petitioner's employ, testified that he went to Athol on June 1, and did some work on one of the elevators, which had been reported as running hard, and did not finish his work until the next day, but used no material in such work.

Edwin W. Ellis testified that Lois L. Ellis, who was his mother, had no knowledge of the contracts for the elevators; that the posts were the only portion of the elevators attached in any way to the building; and that repairs were made on the elevators after March 24, the date of the petitioner's bill. On cross-examination, he testified that some of the machinery of the elevators was attached to the building.

Lois L. Ellis testified that, during all the time that she had been associated with her son in the firm of Edwin Ellis and Son, he had had entire charge of the business, and had conducted it without instructions or dictation from her; that he had the sole management and care of rebuilding and equipping the mill, and she had no knowledge, directly or indirectly, of the contracts made by him for that purpose; and that she had no knowledge whatever of a contract with the petitioner for furnishing elevators for the mill, and never heard of such contract until after the beginning of this action.

Mass.] MORSE, WILLIAMS, & CO. v. ELLIS. 381

The petitioner asked the judge to rule as follows:

" 1. An elevator attached to a building by nails, bolts, and screws, and applicable to the use for which the building is erected, is real estate.

" 2. The owner of property, upon which a mechanic's lien is sought to be enforced for materials ordered by his partner in behalf of a firm of which he is a member, is a purchaser of the materials, within the exceptions of the Pub. Sts. c. 191, § 3."

The court refused to make either of the rulings indicated, but ruled that on all the evidence the petitioner was not entitled to have the lien established, and ordered the petition to be dismissed.

" The petitioner respectfully excepted to the ruling, and to the findings as made, and prays that its exceptions may be allowed."

*D. C. Brewer*, ( *C. T. Davis* with him,) for the petitioner.

*S. P. Smith*, (*H. L. Parker, Jr.* with him,) for the respondents.

BARKER, J. The only difficulty in dealing with this bill of exceptions is to know what it means. The case was tried without a jury and the petition dismissed. A number of facts which appeared from the evidence are stated, and such further testimony as is material was added at length. Two rulings requested by the petitioner are stated, and the bill then concludes as follows: " The court refused to make either of the rulings indicated, but ruled that on all the evidence the petitioner was not entitled to have the lien established, and ordered the petition to be dismissed. The petitioner respectfully excepted to the ruling, and to the findings as made, and prays that its exceptions may be allowed."

The briefs of both parties and the arguments addressed to us go upon the theory that the question for decision is whether, upon the statement of the facts which it is said appeared in evidence and the additional testimony set out in the bill, it was competent for the court to find for the respondents and dismiss the petition. We therefore construe the bill of exceptions to mean that the petitioner excepted to the refusal to give the rulings requested, and that the statement of the court, that on all the evidence the petitioner was not entitled to have the lien established, and its order that the petition be dismissed, were the findings to which the petitioner excepted. See *Johnson* v. *Kimball*, 170 Mass. 58.

Therefore these findings are to be dealt with as findings of fact are dealt with, and are to be sustained if founded upon any reasonable view of the evidence.   On the other hand, a ruling that, as matter of law, the petitioner was not entitled to have the lien established, could not be supported if upon any reasonable view of the evidence a finding for the petitioner might have been made.   Upon this construction of the bill of exceptions, the two rulings requested, the first of which clearly could not be given, might both be properly refused as involving questions of law immaterial in view of the facts as determined by the court.   The question whether the petitioner's work and materials were furnished in the erection of the building, or were furnished in putting in machines which were sold as personalty and remained the personalty of the firm which ordered them, as against the owner of the building, depended very little upon how the elevators were attached.   If the owner of the building was herself a purchaser of the materials furnished, because of her membership in the firm which ordered them, (see *Fletcher* v. *Stedman,* 159 Mass. 124,) that principle of law would still be immaterial to the decision if the contract was one for the sale of personalty which did not become part of the building, or if the certificate was not seasonably filed, or if the statement filed was not a just and true account of the amount due.

The state of the evidence was such that upon either of these questions the court below was justified in finding either for the respondents or the petitioner, and as the court did find for the respondents its action cannot be disturbed or reversed.

*Exceptions overruled.*