## EVELYN B. RANSOM *vs.* CITY OF BOSTON.

Suffolk.    January 15, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Veteran.   Civil Service.   Mandamus.   Contract.   Damages.   Statute.*

Under R. L. c. 19, §§ 23, 24, however it may be in other matters, in regard to the right to preference for continuous employment there is no distinction between a veteran who has been registered, certified and employed in the labor service of a city or town and a veteran who has been examined, registered and employed as a public officer.

Rules made by the civil service commissioners under R. L. c. 19, § 24, in regard to the preference of veterans, provided that "when laborers are required, the employing officer shall make requisition upon the commissioners, stating the number of men wanted, the precise nature of the labor in which they are to be employed and the time and place of employment," that "upon such notice, the commissioners shall certify the names of any and all veterans upon the eligible list, and the employment must be made from the list so certified," and that "the employing officer shall, before selecting or employing any other person, first employ from the list of veterans certified." *Held,* that under these rules a veteran employed in the labor service of a city or town has the right to continuous employment in preference to those laborers who are not veterans so long as there is work to be done of the kind for which he was employed and he is competent to perform it.

If a public officer *de jure* whose salary has been paid to an officer *de facto* must establish his right by mandamus before he can be given any pecuniary relief, this rule has no application to an action brought by a veteran against a city for refusing to continue to employ him as a laborer and employing other persons not veterans to his exclusion.

Where a veteran is employed by a city as a laborer under the terms of R. L. c. 19, §§ 23, 24, and of rules made by the civil service commissioners under the last named section, there is a contract between the veteran and the city in accordance with the provisions of the statute and the rules in regard to the terms of his employment, and if he is discharged or refused employment in violation of these provisions he may recover his damages in an action of contract.

In an action by a veteran who has been employed by a city as a laborer against the city for refusing to continue his employment and employing others, not veterans, to do work which he might have done, if the plaintiff proves his case the measure of his damages is the pay which he would have earned less what he earned or in the exercise of proper diligence might have earned elsewhere.

The fact, that R. L. c. 19, § 35, imposes a punishment by fine for a violation of the provisions of that chapter relating to the civil service or of the rules of the civil service commissioners made under those provisions, does not deprive a veteran employed by a city as a laborer of a right of action against the city for a breach of contract in failing to comply with the terms of such provisions and rules under which he was employed.

SHELDON, J. This is an action of contract brought against the city of Boston to recover wages which the plaintiff would have received if he had been employed continuously by the defendant from May 6, 1895, to the date of his writ.

At the trial in the Superior Court it appeared that the plaintiff, being a veteran of the civil war within the meaning of the civil service statutes and rules, duly registered with the civil service commission in January, 1895, as a laborer for labor service in the city of Boston; that he was eligible for such labor service; that upon a requisition made to the civil service commission by the superintendent of the public grounds department of the defendant city, he was regularly certified for such service, and was employed as a laborer in that department. He worked in that employment steadily until January 1, 1898, when a foreman in that department told him he was suspended, and thereafter he was refused work except for ten days during which he was employed and worked as usual, until March 18, 1898, when he was employed and worked as before until January 30, 1899. After this he was again laid off or suspended from time to time during the winter and early spring, and was employed and worked the rest of the time until December 4, 1901, when by an accident he became incapacitated for work until about December 8, 1902. On this last date he was refused any employment or work, and from that time until the date of the writ he was prevented by the superintendent of the department and the foreman from doing any work. On March 1, 1903, he received notice that he was discharged by the defendant from his employment in the department for the reason that his name had not appeared upon the pay rolls as at work for six months preceding that date; but on March 26, 1903, the superintendent of public grounds was notified by the civil service commission that the plaintiff, being a veteran, was not to be discharged for that cause, and that his name was still on record at the office of the commission as an employee of the public grounds department.

There was evidence that the plaintiff was at all times, except from December, 1901, to December, 1902, able, ready and willing to work as a laborer in the department for which he was eligible, and that he habitually and frequently asked the

superintendent and foreman to employ him; that when he was first laid off or suspended another man, not a veteran, was put to work in that department as a common laborer, and afterwards continued to perform work such as the plaintiff was accustomed to do, while the plaintiff was not permitted to work; that there was work done by persons not veterans classified as laborers while the plaintiff was 'laid off or suspended.

The work done by the plaintiff in the spring, summer and fall was hoeing, sweeping, mowing, loading teams and helping sodders and other laborers. The work done in the winter time was sweeping, shovelling off steps, shovelling snow and clearing the ponds of snow for skating. There was evidence that the force of men employed on the public grounds in the spring, summer and fall for such work as the plaintiff did was cut down during the winter, as there was then no such work to be done, but that certain laborers, not veterans, were employed during the winter months on work which the plaintiff was able and ready to perform. He never was removed or suspended from his employment on any charges preferred against him; and there was no evidence that he ever was removed or suspended after a full hearing before the mayor, or that the removals and suspensions were made upon the written order of the mayor.

Upon this evidence, at the end of the plaintiff's case, the presiding judge ruled that the action in contract could not be maintained, and, upon the general ground that upon all the evidence the plaintiff was not entitled to maintain the action, ordered a verdict for the defendant; and the case comes before us upon the plaintiff's exceptions to this ruling.

It is provided by R. L. c. 19, § 23, that "no veteran who holds an office or employment in the public service of the Commonwealth, or of any city or town therein, shall be removed or suspended, or shall, without his consent, be transferred from such office or employment, nor shall his office be abolished, except after a full hearing of which he shall have at least seventy-two hours' written notice, with a statement of the reasons for the contemplated removal, suspension, transfer or abolition. The hearing shall be before the State board of conciliation and arbitration, if the veteran is a State employee, or before the mayor of the city or selectmen of the town of which he is an

employee, and the veteran shall have the right to be present and to be represented by counsel. Such removal, suspension or transfer, or such abolition of an office, shall be made only upon a written order stating fully and specifically the cause or causes therefor, and signed by said board, mayor or selectmen, after a hearing as aforesaid." The rules of the civil service commissioners made and duly approved under St. 1884, c. 320, § 2, and the acts in amendment thereof, (see now R. L. c. 19, §§ 6, 7, 24,) were put in evidence at the trial, and by agreement of the parties were produced and referred to at the argument in this court. The plaintiff contends that under these statutes and rules the defendant is obliged to employ the plaintiff so long as he is ready and able to perform the labor for which he was employed, until he shall have been discharged in the manner provided by the statute. The defendant does not deny that the statutes are now in full force, or that both the statutes and the rules of the civil service commissioners made under their authority are to be resorted to to ascertain the rights of the plaintiff; nor does the defendant now contend that it had the right to discharge the plaintiff in March, 1903, for the reason then assigned. " Any laborer suspended and not actually employed in the department in which he is enrolled shall at the end of six months be deemed to be out of the service, and shall not be thereafter employed, except after registration and certification by the commissioners; and the employing officer shall forthwith report to the commissioners the name of any laborer so suspended; provided, however, that this provision shall not apply to veterans." Civil Service Rules, Rule 47.

The defendant contends, however, that § 23 already cited does not apply to labor service; that labor service is regulated by § 24; that the effect of the statutes taken together is to draw a distinction between the official classified public service and the labor service of the Commonwealth and its cities or towns. The defendant's argument is that the provisions of the statute to be considered here are contained in R. L. c. 19, §§ 20–24, inclusive. Of these sections, § 20 defines the word "veteran." Section 21 allows a veteran to apply for examination under the rules, and gives him a preference over other applicants; and it is contended that this section cannot be made applicable to

labor service, for which he is not to be examined. Section 23, which has been quoted above, provides in terms for "the public service." Section 24 is to the effect that the rules of the civil service commissioners "shall provide for the employment of veterans in the labor service of the Commonwealth and of the cities and towns thereof." And the defendant insists that the change of language from the words "public service" to "labor service" is upon its face significant of the intention of the Legislature to make the distinction contended for.

The original provision for the examination of applicants for appointment or employment under public authority was made by the St. 1884, c. 320. Section 16 of this chapter provided that "the examination of applicants for employment as laborers shall relate to their capacity for labor, their habits as to industry and sobriety, and the necessities of themselves and their families." In 1887, veterans of the war of the rebellion were given a preference in "appointment to office or employment in the service of the Commonwealth, or the cities thereof," without passing any examination under the act of 1884. St. 1887, c. 437. The St. 1889, c. 473, applied to "all cases of certification for appointment of examined persons," and provided that the veterans should be appointed in preference to other persons who had not a higher standing on the eligible list. St. 1894, c. 519, forbade the removal or suspension of any veteran who held "an office or position in the civil service of any city in the Commonwealth" except in the manner therein provided. St. 1895, c. 501, seems to have been intended chiefly to give to veterans an absolute preference in the public service, without any distinction between the right to appointment to office and employment in labor service. But in *Brown* v. *Russell*, 166 Mass. 14, it was held that §§ 2 and 6 of this statute, so far as they gave to veterans peculiar and exclusive privileges distinct from those of the community in obtaining public office, were unconstitutional, although it was intimated in the opinion that perhaps a different rule might be applied to cases of mere employment for the rendition of services which did not constitute the employee a public officer. The Legislature then enacted St. 1896, c. 517, embodying and repealing many of the previous acts, and containing substantially the provisions now

set forth in R. L. c. 19, §§ 20–24. The sixth section of the statute of 1896 provided that the civil service commissioners should establish "rules to secure the employment of veterans in the labor service of the Commonwealth and of the cities and towns thereof, in the class for which they make application, in preference to all other persons, except women." See now R. L. c. 19, § 24.

If the distinction for which the defendant contends has any existence in our legislation, it was created by the statute just cited. But we have not found it necessary to determine this question; for we are of opinion that whether or not there is any difference between the plaintiff's rights and those of one employed in the classified public service, and whether or not there is any difference between the different branches of the public service, as to which questions we express no opinion, the exceptions in this action must be sustained. We see no valid distinction, at least as to the right to continued employment, between the case of a veteran who has been duly registered, certified and employed in the labor service of a city or town and the case of a veteran who has been duly examined, registered and employed as a public officer. See *Johnson* v. *Kimball,* 170 Mass. 58. The Legislature intended to provide as much in the former case as in the latter for the continuous employment of a veteran as long as he was able to do the work for which he was employed and the occasion for the work continued. The manifest purpose of the statute was to secure the employment of veterans in the labor service of the Commonwealth and its cities and towns in preference to all other persons except women, if the veterans are competent to perform the labor; and it was within the power of the Legislature to make this preference. *Opinion of the Justices,* 166 Mass. 589. And see *Shaw* v. *Marshalltown,* 131 Iowa, 128; *In re Sullivan,* 55 Hun, 285; *People* v. *Grout,* 90 N. Y. Supp. 122. The statute makes it the duty of the civil service commissioners to establish rules to accomplish this purpose; and these rules, when duly approved, have the force of law. *Attorney General* v. *Trehy,* 178 Mass. 186, 188. R. L. c. 19, § 7. In pursuance of the duty thus imposed upon them the commissioners have provided by rules duly approved that "when laborers are required, the

employing officer shall make requisition upon the commissioners, stating the number of men wanted, the precise nature of the labor in which they are to be employed and the time and place of employment. Upon such notice, the commissioners shall certify the names of any and all veterans upon the eligible list, and the employment must be made from the list so certified." Rule 44. And again it is provided by Rule 45, that " the selection and employment shall be made from the list certified, and the employing officer shall, before selecting or employing any other person, first employ from the list of veterans certified." In view of the language of these rules and of the fact that they were passed under a statute which made it obligatory upon the commissioners to establish rules giving to veterans a preference in the labor service, they must be so construed as to accomplish that purpose and to give to the plaintiff the right to continuous employment in preference to those laborers who were not veterans, so long as there was work to be done of the kind for which he was employed, and as he was competent to perform that work.

But the defendant contends that, even if this be the case, yet the plaintiff had no contract with the city, was not employed for any definite time or at any fixed rate of pay or salary, and so cannot maintain an action to recover wages for work that he has not performed. *Chase* v. *Lowell*, 7 Gray, 33. *Knowles* v. *Boston*, 12 Gray, 339. *Donaghy* v. *Macy*, 167 Mass. 178. *Malcolm* v. *Boston*, 173 Mass. 312. *Love* v. *Mayor & Aldermen of Jersey City*, 11 Vroom, 456. *Conner* v. *Mayor & Aldermen of New York*, 1 Seld. 285. The argument is that a public officer cannot maintain an action for his salary unless he actually has exercised the office, especially if the salary has been paid to a *de facto* officer, and that he must at any rate establish his right by mandamus before he can be given any pecuniary relief, either against the person who has wrongfully held the office or against the city or town which pays the salary. See *Phillips* v. *Boston*, 150 Mass. 491, 493. There are many decisions in other States in which this doctrine has been upheld, and there are also strong decisions to the contrary. *Farrell* v. *Bridgeport*, 45 Conn. 191. *Conner* v. *Mayor & Aldermen of New York*, 1 Seld. 285. *Hadley* v. *Mayor & Aldermen of Albany*, 33 N. Y. 603. *Smith* v. *Mayor & Aldermen of New York*, 37 N. Y. 518.

*Dolan* v. *Mayor & Aldermen of New York*, 68 N. Y. 274. *Kennedy* v. *Mayor & Aldermen of New York*, 79 N. Y. 361. *McVeany* v. *Mayor & Aldermen of New York*, 80 N. Y. 185. *Nichols* v. *MacLean*, 101 N. Y. 526. *Gregory* v. *Mayor & Aldermen of New York*, 113 N. Y. 416. *Hagan* v. *Brooklyn*, 126 N. Y. 643. *Martin* v. *New York*, 176 N. Y. 371. *Grieb* v. *Syracuse*, 94 App. Div. (N. Y.) 133. *Schuyler* v. *New York*, 95 App. Div. (N. Y.) 305. *State* v. *Mayor of Newark*, 29 Vroom, 12. *Luzerne County* v. *Trimmer*, 95 Penn. St. 97. *Hines* v. *District of Columbia*, MacArthur & Mackey, 141. *Frazier* v. *Virginia Military Institute*, 81 Va. 59. *Steubenville* v. *Culp*, 38 Ohio St. 18. *Glascock* v. *Lyons*, 20 Ind. 1. *County Commissioners* v. *Anderson*, 20 Kans. 298. *Selby* v. *Portland*, 14 Ore. 243. *Hunter* v. *Chandler*, 45 Mo. 452. *Sheridan* v. *St. Louis*, 183 Mo. 25. *Wheatly* v. *Covington*, 11 Bush, 18. *Gorley* v. *Louisville*, 108 Ky. 789. *Baxter* v. *Brooks*, 29 Ark. 173. *Michel* v. *New Orleans*, 32 La. Ann. 1094. *Scott* v. *Crump*, 106 Mich. 288. *Stadler* v. *Detroit*, 13 Mich. 346. *Shaw* v. *Macon*, 19 Ga. 468. *Mayor & Council of Macon* v. *Hays*, 25 Ga. 590. *Brunswick* v. *Fahm*, 60 Ga. 109. *Dorsey* v. *Smyth*, 28 Cal. 21. *Carroll* v. *Siebenthaler*, 37 Cal. 193. *Meredith* v. *Board of Supervisors*, 50 Cal. 433. *Bastrop County* v. *Hearn*, 70 Tex. 563. *Kendall* v. *Raybauld*, 13 Utah, 226. *Memphis* v. *Woodward*, 12 Heisk. 499. *Andrews* v. *Portland*, 79 Maine, 484.

But the case at bar differs from the cases dealt with in these decisions. The plaintiff was not the holder of a public office which had been usurped by another who was readily to be identified, and against whom a complete remedy was available. He was a laborer, a member of a gang. It ordinarily would be difficult and frequently impossible to identify the laborer who was doing the work that ought to have been given to the plaintiff. If he could identify the particular person who had been employed in his stead, it would be practically a denial of justice to say that his only remedy was by a suit for damages against another laborer, who presumably would have no means to satisfy a judgment. Such a limitation has been made in the case of public officers, to whom it usually could be applied without injustice; but we have found no decision in which it has been extended to such a case as this, and in our opinion·

it ought not to be so extended. *Houston* v. *Estes,* 35 Tex. Civ. App. 99. *Houston* v. *Clark,* 80 S. W. Rep. 1198.

Nor can it be said that there was no contract between the parties. *Dolan* v. *Orange,* 41 Vroom, 106. *Farwell* v. *Rockland,* 62 Maine, 296. The contract of employment must be deemed to have been made in view of the statutes regulating the employment of laborers by towns and cities. The statutes and the rules of the civil service commissioners entered into the contract and constituted a part of the terms of his employment. For any breach of these terms of employment he may recover in an action of contract. This point was expressly decided in *United States* v. *Wickersham,* 201 U. S. 390, citing *Emmitt* v. *Mayor & Aldermen of New York,* 128 N. Y. 117, and *Lellmann* v. *United States,* 37 Ct. of Cl. 128.

We do not mean to intimate that the plaintiff is necessarily entitled to recover the full amount which he has claimed. There was evidence that, for a part of the time at least during which work was refused him, he acquiesced in the refusal, and that at other times there was no work to be done such as he had been employed for and was able to perform. *Norton* v. *Brookline,* 181 Mass. 360. *Clark* v. *Boston,* 179 Mass. 409. The only liability of the city is for not having given him the preference over others, not veterans, to which he was entitled while there was such work to be done. If, as the jury might have found on the evidence, the city failed to do this, then he was entitled to recover ; and, as in the ordinary case of a breach of a contract of employment, the measure of damages would be determined by the pay he would have earned, less what he earned, or in the exercise of proper diligence might have earned, elsewhere. The fact that the statute imposes a penalty for any breach of its provisions, (R. L. c. 19, § 35,) does not deprive the plaintiff of his civil remedy. *Parker* v. *Barnard,* 135 Mass. 116. The case should have been submitted to the jury.

*Exceptions sustained.*

The case was argued at the bar in January, 1906, before *Knowlton,* C. J., *Morton, Lathrop, Hammond,* & *Sheldon,* JJ., and afterwards was submitted on briefs to all the justices.

*J. K. Berry,* for the plaintiff.

*P. Nichols,* for the defendant.