JOHN J. MALLOY *vs.* MAYOR OF PEABODY & another.

Essex.   December 10, 1937. — December 27, 1937.

Present: RUGG, C.J., FIELD, LUMMUS, QUA, & COX, JJ.

*Civil Service. Veteran. Municipal Corporations,* Officers and agents.

A veteran who had been employed by a city "without consideration of" the civil service law, G. L. (Ter. Ed.) c. 31, and without registering under § 24 was not entitled to a veteran's preference thereunder.

An order by a city council directing the commissioner of public works to return a discharged veteran to his position in the labor service of the city, was not "necessary action to secure" his "employment . . . in preference to" others within G. L. (Ter. Ed.) c. 41, § 112.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Essex on April 2, 1937.

The petition was ordered dismissed by *Pierce,* J. The petitioner alleged exceptions.

*H. E. Kiley,* for the petitioner.

*E. A. Hershenson,* for the respondents.

Cox, J. This is a petition for a writ of mandamus directing the respondents, the mayor and the commissioner of public works of the city of Peabody, to restore the petitioner to the position of laborer in the department of public works of that city. The case was referred to an auditor who reported his findings to the court. The single justice

ordered the petition dismissed and denied the petitioner's requests for rulings. The auditor found that the petitioner was "appointed" as a laborer in the water department of the city in October, 1924, "without consideration of Chapter 31 of the General Laws (Civil Service)," and that on December 9, 1936, he was dropped or dismissed. The water department was consolidated into and became a part or division of the department of public works on or about March 28, 1935. This consolidation was not intended to and did not in fact affect in any way the employment of the petitioner. He served in the armed forces of the United States in the Great War from April 7, 1917, until November 11, 1918, and was honorably discharged therefrom on February 20, 1919. He never registered with the civil service commission for employment in the labor service and was never placed on any eligible list for such employment, nor was he ever certified by the civil service commission for the labor service. He was a hard working and efficient employee and no reasonable fault could be found with the manner or way in which he performed his work. At no time has any official of the city made requisition on the civil service commission for laborers. Toward the end of 1936 it was discovered that there were insufficient funds in the segregated budget item to pay all the laborers in the department of public works, and the mayor, on December 9, 1936, directed the commissioner to drop sixty designated employees including the petitioner. There was no more reason to select the petitioner for dismissal than any other employees. At the time of the hearing before the auditor, other employees, not veterans, were still employed as laborers in the department and doing work formerly done by the petitioner. The city has not adopted "G. L. c. 31" unless in the following ordinance, passed May 8, 1917, and approved May 9, 1917: "He (the Commissioner) shall have the power to employ such superintendents, inspectors, foremen, clerks, laborers and other employees, as may be necessary from time to time to carry out said work, subject, however, to any and all Civil Service Laws and all rules and requirements of the Massachusetts

Civil Service Commission, and further subject to any law of this Commonwealth relative to City employees." The city has taken no action relative to the provisions of G. L. c. 41, § 112, unless by the following order of the city council dated March 11, 1937: "Ordered: That the Commissioner of Public Works return to their former positions in the labor service of the City of Peabody, John J. Malloy . . . [and two others]; and that they receive back pay from the date of their discharge."

In this court it was agreed that the single justice heard the petition on the auditor's report alone, that the facts stated in the report are true and that it may be treated as incorporated in the record.

It has been argued that the ordinance adopted on May 8, 1917, was not an acceptance of "G. L. c. 31." See *McNeil* v. *Mayor & City Council of Peabody*, 297 Mass. 499, 500. While it is not entirely clear, yet we assume by this that the parties mean there has been no acceptance of "the provisions of this chapter [G. L. c. 31] and the rules established under it relative to employment of laborers designated as the 'labor service,'" which are "not [to] be in force in any city of less than one hundred thousand inhabitants, which has not heretofore accepted the corresponding provisions of earlier laws, until said provisions are accepted by the city council." G. L. (Ter. Ed.) c. 31, § 47. But even if we assume that said provisions have been accepted, yet the petitioner does not bring himself within the provisions of the chapter relative to the employment of veterans in the labor service. He was employed "without consideration of Chapter 31 of the General Laws (Civil Service)." He never registered for employment, his name was never placed on an eligible list and he was never certified for employment as required by § 24 of c. 31. Accordingly he could not have invoked the rights accorded to veterans under that chapter. *Sims* v. *Police Commissioner of Boston*, 193 Mass. 547. *Bates* v. *Selectmen of Westfield*, 222 Mass. 296. *Canty* v. *City Council of Lawrence*, 275 Mass. 261.

G. L. c. 41, § 112, provides that "In towns in which the provisions of chapter thirty-one and the rules governing the

civil service have not been applied to the labor service, the selectmen and the city councils shall take any necessary action to secure the employment of veterans in the labor service of their respective cities and towns in preference to all other persons except women." The petitioner contends that the order of the city council adopted on March 11, 1937, directing the commissioner of public works to return the petitioner to work, was the "necessary action" contemplated by this section. In the veterans' preference act,. so called, St. 1896, c. 517, the provisions now found in c. 41, § 112, appear in substantially the same form in § 6 which, among other things, requires the civil service commissioners to establish rules to secure the employment of veterans in the labor service of the Commonwealth and its cities and towns. The provisions of St. 1896, c. 517, appear in R. L. c. 19, which chapter is entitled, "Of the Civil Service." The emergency act, St. 1919, c. 150, did more than enlarge the scope of 'the word "veteran." It provided in § 3 that "A veteran who registers for employment in the labor service of the commonwealth and of the cities and towns thereof, if found qualified, shall be placed on the eligible list for the class for which he registers ahead of all other applicants. The names of eligible veterans shall be certified for labor service in preference to other persons eligible according to the method of certification prescribed by the civil service rules applying to civilians." It permitted the civil service commission under certain conditions to fix age limits for persons certified and repeated in substance the provisions now contained in c. 41, § 112. When the General Laws were enacted, effective January 1, 1921, all the provisions of the statutes above referred to relating to veterans' preference, except what now appears in c. 41, § 112, were incorporated into c. 31, entitled "Civil Service" and under the subtitle, "Veterans' Preference." Chapter 41 relates to "Officers and Employees of Cities, Towns and Districts" and of its one hundred nineteen sections only three, §§ 110 and 111, dealing with holidays and vacations, and § 112, entitled "Employment of Veterans," relate to employees.

The *Opinion of the Justices,* 166 Mass. 589, 596–598, discusses § 6 of St. 1896, and while there is no specific reference to the clause therein contained which is now in substance found in c. 41, § 112, yet there is expression of the opinion that a mere preference of a veteran in the labor service and nothing more would be of doubtful constitutionality. But as the justices point out, it might be presumed that the General Court knew of the existence of the rules and regulations of the civil service commission relative to labor service when they passed the statute of 1896, and it was reasonable to infer that the intention of the General Court was that the rules so established might provide for determining in some manner that the veterans who should make application to be employed in the labor service should have the capacity to perform the labor involved in the service. In *Johnson* v. *Kimball,* 170 Mass. 58, the petitioner relied upon that part of St. 1896, c. 517, § 6, which is now in substance c. 41, § 112, and, while the court held that the petitioner did not come within the "labor service," as defined by the civil service commissioner, yet it said at page 62, in speaking of the provision that selectmen are required to "take such action as may be necessary" to secure the employment of veterans: "We express no opinion whether so indefinite a provision can be regarded as mandatory and one to be enforced by the court, or whether, if it can be enforced by the court at least to the extent of compelling the selectmen to take some action under it, it can be enforced on the complaint of a veteran who has no private interest in having it enforced distinct from that of veterans generally."

The manifest purpose of the statute was to secure the employment of veterans in the labor service of the Commonwealth and its cities and towns in preference to all other persons except women, if the veterans are competent to perform the labor, *Ransom* v. *Boston,* 192 Mass. 299, 304, but we are of the opinion that the order adopted on March 11, 1937, was not the "necessary action" contemplated by it "to secure the employment of veterans in the labor service." If the clause in question is not subject to the infirmities suggested in *Johnson* v. *Kimball,* 170 Mass. 58, as to

which we express no opinion, we think that some formal action was required, comprehensive in its nature, which would set up requirements and standards in conformity, at least, with those indicated in the *Opinion of the Justices,* 166 Mass. 589.

Another difficulty with the petitioner's contention is found in the fact that although he was employed in 1924, it was not until March, 1937, and after he had been dropped or discharged, that the city council attempted to take any action. This petition must be determined upon the facts which existed at the time of his discharge. *Sims* v. *Police Commissioner of Boston,* 193 Mass. 547.

The result is that the petitioner was not harmed by the refusal of the single justice to give his requested rulings and that the order is

*Exceptions overruled.*