THE PEOPLE ex rel. JOHN W. GILCHRIST et al., Respondents, v. FRANCIS MURRAY, Appellant.

A judgment of ouster in an action in the nature of a *quo warranto* does not conclude one who is in no sense a party to the action, and does not take office from or in any way hold under the defeated party ; nor is it competent evidence against him.

In March, 1873, defendant was duly appointed assistant clerk of one of the district courts of New York city for the full term of six years; he was removed by the justice of that court, and in January, 1875, the relator was appointed by the justice. In January, 1876, the relator was removed, and one M. appointed. Thereupon an action in the nature of a *quo warranto* was brought on the relation of the relator herein against M. A judgment was rendered therein, deciding that the relator was entitled to the office, and that M. be ousted. A few days prior to the entry of judgment, defendant, with the consent of M., resumed possession under his original appointment. *Held,* that the justice had no power to remove defendant, who was entitled to the office for the full term ; that the judgment against M. was neither conclusive nor any evidence against him.

*King* v. *Lisle* (Andrews, 163) ; *King* v. *Hebden* (id., 389) ; *King* v. *Grimes* (5 Burrows, 2599) ; *King* v. *Mayor* (5 D. & E., 66) ; *R. and G. V. R. R. Co.* v. *Clarke Nat. Bk.* (60 Barb., 234) ; *People ex rel.* v. *Anthony* (6 Hun, 148), distinguished.

The office of assistant clerk of a district court is not a city or county office, within the meaning of the provision of the charter of New York city of 1873 (§ 114, ch. 335, Laws of 1873), providing that every person holding such an office, who shall accept any other office specified, shall be deemed to have vacated the former.

Accordingly *held,* that defendant did not lose his office as assistant clerk by being elected member of assembly, and by entering upon the duties of that office after his removal, or by accepting clerical positions in departments of the city government, in the absence of proof justifying an inference that he intended to or did resign his office as assistant clerk.

(Argued April 9, 1878 ; decided May 21, 1878.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, reversing a judgment in favor of defendant, entered upon a verdict and granting a new trial.

This action was in the nature of a *quo warranto,* brought to oust the defendant from the office of assistant clerk of the

District Court for the second judicial district in the city of New York, and to establish the right of the relator thereto.

The facts appear sufficiently in the opinion.

*Samuel Hand*, for appellant. The judgment record in the suit by the relator against Mangin was properly excluded. (*Goddard* v. *Benson*, 15 Abb. Pr., 191; *Campbell* v. *Hall*, 16 N. Y., 575; Freeman on Judgments, chap. 9, § 154; *Degraff* v. *Hovey*, 16 Abb., 120; *People* v. *Dikeman*, 7 How., 124; 1 R. S., 124, 125; *People ex rel. Healey* v. *Leask*, 67 N. Y., 521.) Justice FIELD had no power to remove the defendant. (*People ex rel. Hogan* v. *Flynn*, 62 N. Y., 375; *People ex rel. Healey* v. *Leask*, 67 id., 521.) The acceptance of the office of member of assembly by defendant did not work a forfeiture of the office of assistant clerk, as the two offices were not incompatible. (*People ex rel. Ryan* v. *Green*, 5 Daly, 254; 58 N. Y., 295; *Sullivan* v. *Mayor, etc.*, 53 id., 652; *Olmstead* v. *Mayor, etc.*, 10 J. & S., 481.) Section 114 of the charter of 1873 (chap. 335) does not apply to this case. (*Whitmore* v. *Mayor, etc.*, 67 N. Y., 21.)

*Nelson J. Waterbury*, for respondents. The judgment record in the suit against Mangin was admissible. (*People* v. *Fairchild*, 67 N. Y., 334; *People* v. *Flanagan*, 66 id., 243; Code, § 437; *King* v. *Lisle*, Andrews, 163, 173, 174; *King* v. *Hebden*, id., 388, 389, 392; *Rex* v. *Grimes*, 5 5 Burr., 2599, 2601; *King* v. *Mayor, etc.*, 5 D. & E., 66–72; *Earl of Carnarvon* v. *Villebois*, 13 M. & W., 313, 331; *R. and G. V. R. R.* v. *Clark Nat. Bk.*, 60 Barb., 234, 249; *People* v. *Anthony*, 6 Hun, 142, 148; *People* v. *Conover*, 6 Abb. Pr., 220, 222, 226; *Welch* v. *Cook*, 7 How. Pr., 262.) Defendant resigned his office by accepting one incompatible with it. (*People* v. *Green*, 5 Daly, 254, 255, 269; Laws 1873, p. 519, § 114; A. & A. on Corp. [1st ed.], 255; *People* v. *Carrique*, 2 Hill, 93, 97, 102, 105; *People* v. *Nostrand*, 46 N. Y., 375, 381; *Sweeny* v. *Mayor*, 5 Daly, 274, 275; *Bernard* v. *City of Hoboken*, 3 Dutch. [37 N. J. L.], 412, 414.)

EARL, J.  Thomas Kivlen was elected justice of one of the district courts in the city of New York in December, 1869.  He took his office January 1, 1870, and held it until his death in the fall of 1873.  In December, 1873, Maunsel B. Field was appointed by the governor justice of the same court, and held the office until December 31, 1874. In the fall of 1874 Charles M. Clancy was elected to fill the unexpired term of such office, and served under that election until December 31, 1875.  In the fall of 1875 he was elected for a full term, and took his office under that election January 1, 1876.  In March, 1873, justice KIVLEN appointed the defendant, Murray, assistant clerk of the court for a full term of six years, and he served until December 31, thereafter, when justice FIELD removed him and appointed in his place James A. Monaghan.  He continued to serve in the office during the term of justice FIELD.  Gilchrist, the relator, was appointed assistant clerk of the court by justice CLANCY in January, 1875, and he continued to serve until January, 1876, when justice CLANCY removed him and appointed in his place Francis Mangin.  Mangin continued to serve until January 2, 1877, when the defendant Murray again, by the consent of Mangin and the justice, resumed possession of the office under his original appointment of 1873, and thereafter held the office.  After the appointment of Mangin an action was commenced by the people, upon the relation of Gilchrist, against Mangin to oust him from the office, and in that action judgment was rendered on the 7th day of January, 1877, deciding that Gilchrist was entitled to the office, and that Mangin be ousted therefrom.  On the second day of January, however, before the entry of judgment, the defendant had taken possession of the office and he was discharging its duties at the time the judgment was entered.  Gilchrist then caused this action to be commenced to oust the defendant from the office.  He claimed that the defendant had vacated his office by the acceptance of other offices incompatible with the office of assistant clerk, and also that he had resigned his office, and that the judgment against

Mangin conclusively established his right to the office. The trial judge decided that the defendant was entitled to the office, and directed a verdict in his favor. Upon appeal, the General Term reversed the judgment entered upon this verdict, upon the ground that the judgment against Mangin was conclusive of the relator's right to the office.

After defendant's appointment as assistant clerk he was entitled to hold the office for the full term of six years, and the justice of the court could not remove him. (*People v. Flynn*, 62 N. Y., 375; *People ex rel. Healy* v. *Leask*, 67 id., 521.) He was therefore entitled to hold the office when this action was commenced, unless some one of the points taken against him on behalf of the plaintiffs is well founded, and these I will now proceed to consider.

The judgment in the action against Mangin is not conclusive or even evidence against this defendant. It is a general rule that judgments are conclusive only against the parties thereto or their privies. (*Campbell* v. *Hall*, 16 N. Y., 575.) This defendant was in no sense a party to that action, and he did not take his office from, or in any way hold it under, Mangin, and under such circumstances there never was a time in the jurisprudence of this country or of England when an adjudication upon writ of *quo warranto* against Mangin would bind him. Such an adjudication would bind all who came in under Mangin, and whose title to the office depended upon his; and to this effect are the cases to which the learned counsel for the plaintiffs has called our attention. In *King* v. *Lisle* (Andrews, 163), *quo warranto* was brought against the defendant for acting as burgess of the town of Christ Church. He had been elected one of the burgesses by Goldwire, claiming to act as mayor of the town, at the time when a writ of *quo warranto* was pending against Goldwire in which it was afterward determined that he was not the mayor. As Goldwire was neither *de jure* nor *de facto* mayor, it was held that the office of burgess could not be derived from him. It was said: "In the present case it seems very extraordinary, that one called to account by the

crown for acting as burgess should set up a title derived
to him from a pretended mayor whose right was litigating,
at the suit of the crown, at the very time when the other
was elected.  If such an one hath so great a power against
the crown, there will be no difference between a rightful
mayor and an intruder.  It was said by LEE, C. J., and
PAGE, justice, that as there was so recent a prosecution
against Goldwire, and as the present prosecution is by the
crown, the issue must be construed as has been mentioned,
viz.: whether Goldwire was a lawful mayor or not." And
in such a case it might well be held that the adjudication
against Goldwire should be binding upon Lisle deriving
title from him.  In *King* v. *Hebden* (Andrews, 389), there
was a writ of *quo warranto* against Hebden for acting as
one of the bailiffs of the corporation of Scarborough, and he
pleaded a nomination by A and B, two bailiffs of the same
corporation.  Upon the issue taken of their being bailiffs, a
judgment of ouster in a *quo warranto* against them was held
admissible and conclusive against Hebden, unless shown to
have been collusive.  The decision was based upon the ground
that Hebden held under and derived his right from A and
B.  In *King* v. *Grimes* (5 Burrows, 2599), there was an
information in the nature of a *quo warranto* against Grimes
to show by what authority he claimed to be one of the chief
burgesses of the borough of Yarmouth, in the Isle of Wight.
It appeared among other things, that John Leigh presided as
mayor at the election of the defendant as chief burgess and took
part in such election, and it was held that a judgment given
against Leigh on an information against him for usurping
the office of mayor was evidence against Grimes, who claimed
title, in part at least, from and under him.  In *King* v. *The
Mayor, etc., of York* (5 D. & E., 66), all that was decided per-
tinent to this case is, that a judgment of ouster against one cor-
porator is conclusive evidence against another who derives
title under him.  KENYON, C. J., said : "If you derive title
to a corporate office through A., and the prosecutor show a
judgment of ouster against A., it is conclusive against you, un-

540 PEOPLE ex rel. GILCHRIST *v.* MURRAY. [March,

Opinion of the Court, per EARL, J.

less you can impeach the judgment as obtained *per fraudem."* I cannot perceive that anything pertinent to this case was decided in *Earl of Carnarvon* v. *Villebois* (13 M. & W., 313). In *Rochester and Genesee Val. R. R. Co.* v. *Clarke Nat. Bk.* (60 Barb., 234) it was held that in order to constitute a person an officer *de facto*, there must be color of right, and that there could be no such color after a judgment against the person in a direct proceeding to determine the title to the office, and that after such judgment persons having notice thereof could not treat such person as an officer *de facto.* That case does not touch this. In *The People ex rel. Steinert* v. *Anthony* (6 Hun, 142) the action was in the nature of a *quo warranto*, to determine whether the relator Steinert or the defendant Anthony was entitled to the office of clerk of one of the district courts of the city of New York. Steinert was appointed clerk by McGuire, who claimed to be, and at the time of the appointment was, acting as justice of the court. Afterward one Stemmler claimed to have been legally elected to the office of justice, and an action upon his relation in the nature of *quo warranto* was commenced against McGuire, and in that action it was determined that McGuire was not entitled to the office and that Stemmler was, and after Stemmler obtained possession of the office under the judgment in that action he appointed the defendant, Anthony, clerk, and it was held that the judgment against McGuire was competent evidence against Steinert who claimed under him.

I have now noticed all the cases to which our attention was called by the counsel for plaintiffs upon the point now under consideration, and it will be seen that none of them is an authority for holding that the judgment against Mangin can have any effect upon the rights of this defendant, who did not come into the office under Mangin, but claimed it in hostility to both Mangin and Gilchrist by a title older than that of either. There is not only no authority, but there is no reason founded upon considerations of convenience or public policy for giving to that judgment the effect

claimed. Generally, the only interest the public have in any public office is that its duties are well discharged. If they have any further interest in any case, it is that the person rightfully entitled to an office shall possess it and discharge its duties. It certainly can promote no public interest that two persons, neither of whom are really entitled to an office, shall, by a litigation to which, practically, they alone are parties, settle the title to the office to the exclusion of the rightful claimant.

No serious inconvenience can follow from refusing to such a judgment the effect claimed. The Code (section 440) authorized the bringing of such an action against the several claimants to an office, and thus the entire controversy in reference to the office could be settled. It could not often happen that one of the claimants was unknown, or that a person should secretly or clandestinely intrude into an office without any color or claim of title. Such an intrusion might work too serious consequences to the intruder under sections 439 and 441.

But let us for a moment consider what might follow from holding such a judgment conclusive. The attorney-general alone is authorized to bring such an action, and his discretion in reference thereto cannot be controlled. (Code, § 432; *People ex rel. Demarest* v. *Fairchild,* 67 N. Y., 334.) He may determine upon whose relation he will commence the action and against whom he will commence it, and the person really entitled to the office might thus be excluded from the litigation and yet be bound by the judgment, unless fraud or collusion could be shown. The rightful claimant of an office might thus, before he knew it, be forever shut out of his office. Generally, the litigation under the Code for an office is a mere private litigation between the several claimants to the office in which the people are a mere nominal party. The relator is to bear the costs, and may recover his damages for the usurpation of his office, and we can perceive no reason for holding judgments in such actions conclusive upon persons neither parties nor privies which would not apply generally to judgments *inter partes.*

It only remains further to be considered whether the defendant lost his office by anything which he did subsequently to his appointment. He was elected member of assembly in the fall of 1873, and entered upon his office as such on the seventh day of January, after his removal from the office of assistant clerk, and served during one session of the Legislature. During a portion of the year 1875 he was a clerk in the department of public works, and during three months of 1876 he was a clerk in the mayor's office. The office of member of assembly and the clerical positions named were not incompatible with the office of assistant clerk. (*The People ex rel. Ryan* v. *Green*, 5 Daly, 254; S. C., 58 N. Y., 295.) The office of assistant clerk is not a city or county office within the meaning of section 114 of chapter 335 of the Laws of 1873, and hence the defendant did not vacate such office by the acceptance of the other positions above named. (*Whitmore* v. *The Mayor*, etc., 67 N. Y., 21.)

There were no facts from which the jury could have inferred that the defendant intended to resign his office, or from which it could be legally inferred that he did resign it. Upon his removal by Justice FIELD, he protested against his removal and served written protests. He subsequently commenced a suit against the city for his salary, which was pending. He from time to time claimed his office, and so far as appears, at the first moment, when he could, took possession again thereof. It was in no way inconsistent with his claim of the office that he should, while excluded therefrom, serve a term in the Legislature and accept other employment.

The verdict was therefore properly directed for the defendant, and the order of the General Term must be reversed and judgment entered upon the verdict affirmed, with costs.

All concur.

Order reversed and judgment affirmed.