The People of the State of New York ex rel. Ralph P. Stalter, Relator, *v*. Patrick J. Lynch and Another, Respondents. (Action No. 1.)

The People of the State of New York ex rel. Charles B. Byrnes, Relator, *v*. John B. Lawson and Another, Respondents. (Action No. 2.)

Supreme Court, Rockland County, September 27, 1926.

**Villages — officers — election — persons receiving highest number of votes for village offices were ineligible — under Village Law, § 53, persons receiving next highest number, if eligible, are elected.**

The relators in the two proceedings herein were eligible for election, respectively, to the offices of village president and village trustee of the village of Haverstraw. The two nominees who received the highest number of votes for those offices were ineligible. The relators received the next highest number of votes for their respective offices. Under section 53 of the Village Law in case a person receiving the highest number of votes for a village office is ineligible, the person receiving the next highest number of votes, if eligible, will be elected to the office.

Accordingly, in these proceedings the relators were elected to the respective offices for which they were nominated and no vacancy existed in the offices by reason of the fact that the persons receiving the highest number of votes were ineligible.

Actions to determine title to village offices.

*Ernest W. Hofstatter*, for the relators.

*Frank Comesky*, for the respondents.

Tompkins, J. By stipulation, these actions were tried and are being decided together, precisely the same questions being involved in both.

At the annual village election held in the village of Haverstraw, Rockland county, N. Y., on the 16th day of March, 1926, one Patrick J. Lynch received the highest number of votes for the office of village president, and the plaintiff in action No. 1, Ralph P. Stalter, received the next highest number, the vote being approximately 900 for Mr. Lynch and 800 for Mr. Stalter. It is conceded that Lynch was not at the time of the election the owner of property assessed to him upon the last preceding assessment roll of the village, and hence was not eligible to hold or be elected to the office of village president. Stalter possessed the necessary property qualifications, and was eligible. Following Stalter's application to the Attorney-General for permission to bring this action, but before it was commenced, Lynch, conceding his ineligibility, renounced all claim to the office; whereupon the village board, acting on the assumption that a vacancy existed in the

office of president, appointed the respondent Snedeker to that office, and issued to him a certificate of such appointment.

The facts in action No. 2 are substantinlly the same as in action No. 1, except that they relate to the office of village trustee. The questions at issue are whether, as a matter of law, Stalter and Byrnes are the duly elected president and trustee of said village and incidentally, whether vacancies existed which the board of trustees had power to fill by appointment. It has, for many years, been the general rule in this country, and it likewise is the law of England, that a candidate for public office is not elected thereto unless he is eligible and also receives a majority or plurality of the legal votes, and in such a case the ineligibility of the candidate receiving the highest number of votes would not entitle the next highest eligible candidate to a certificate of election. This is the rule for which . the defendants contend, but in my opinion the general Village Law has modified that common-law rule with respect to the election of village officers.

Section 53 of the Village Law provides that: " The person eligible and receiving the highest number of votes for an office shall be elected thereto," and my interpretation of this provision is that the person certified as receiving the highest number of votes who is eligible to the office is elected thereto; that seems to have been the intention of the Legislature whose purpose evidently it was to prevent the failure of a village election, and make unnecessary and impossible a special election. That intent seems to me to be obvious from the language of section 53 above quoted, and is emphasized by the other provision of section 53 directing the inspectors of election to file with the village clerk their certificate setting forth the total number of votes cast for each office, and the number of votes cast for each person for such office; so that in the event of the ineligibility of the person receiving the highest number of votes, it could be determined who of the eligible candidates had received the highest number; and there is no provision for the issuing of a certificate of election by the inspectors or village clerk to the one receiving the highest number of votes as is done in the case of town, county and State officers. Section 53 also provides that in the case of a tie vote, the board of trustees shall determine by lot " which of them shall be deemed elected." Section 54 provides that no election of village officers heretofore or hereafter held in any village shall be invalid on account of the failure of the electors to designate in their ballots the respective terms of office of persons to be elected thereat for the same office, for different terms; but the persons so to be elected to such office, who are eligible and receive the highest number of votes, shall be elected. The person

first named on a ballot containing the names of more than one person for such an office, and not designating their respective terms, shall be deemed designated for the longest term, the second for the next longest term and so on to the end.

The Village Law makes no provision for a special election to fill vacancies caused by failure to elect at an annual election, and the power of the board of trustees to fill vacancies by appointment does not contemplate the filling of such a vacancy, but relates only to vacancies created by death, resignation, removal and otherwise than by the expiration of a term of office. Section 30 of the Public Officers Law (as amd. by Laws of 1920, chap. 259) in defining " vacancies " does not include an abortive election among the causes creating vacancies that can be filled by appointment or special election. All these provisions taken together clearly indicate the purpose of the Legislature to prevent the failure of an annual village election in respect of any candidate to be elected thereat, by giving the office to the person receiving the next highest number of votes who may possess the necessary qualifications.

My conclusions are that no vacancies existed in the two offices in question that the board of trustees had power to fill by appointment; and the ineligibility of the defendants being conceded, and it being agreed that the plaintiffs were and are eligible and that they received the next highest number of votes, were elected and are entitled to judgments in these actions. These conclusions are supported by the fact that in two other cases precisely similar to this commenced on behalf of candidates in village elections who claimed that the candidates receiving the highest number of votes were ineligible, and that the plaintiffs were elected because they were eligible and had received the next highest number of votes, there was no claim or suggestion that vacancies existed which the board of trustees could have filled by appointment, or that the plaintiffs would not have been entitled to the offices in the event that the court found that the candidates receiving the highest number of votes were ineligible. In these two cases, however, the courts held that the candidates receiving the highest number of votes were eligible and for that reason only, the plaintiffs who had received the next highest number of votes failed in those actions. (*People ex rel. Worth* v. *Kanar,* 80 Misc. 552; *People ex rel. DeJohn* v. *Lytle,* 116 id. 1.)

Judgments for the plaintiffs.