STATE OF INDIANA, EX REL. HOGUE v. SLACK.

[No. 25,520. Filed July 27, 1928.]

*Matson, Carter, Ross & McCord, Hanna & Daily, Robert R. Dalton* and *William R. Ringer*, for appellant.
*John W. Holtzman, Edward H. Knight, Miller, Dailey & Thompson* and *Albert L. Rabb*, for appellee.

WILLOUGHBY, J.—This was an action by appellant against appellee in the Marion Circuit Court in the nature of *quo warranto* for usurpation of the office of mayor of the city of Indianapolis. This proceeding is based on §1212 Burns 1926, which provides that whenever an information shall be filed against a person for usurping an office by the prosecuting attorney, he shall also set forth therein the name of the person rightfully entitled to the office with an averment of his right thereto; and when filed by any other person, he shall show his interest in the matter, and he may claim the damages he has sustained.

The complaint was in two paragraphs and appellee demurred to each paragraph separately and severally. The demurrer was sustained, and appellant refused to plead further and judgment was rendered against him that he take nothing by the suit and that he pay the costs of the proceedings.

The appellant appeals and alleges that the court erred in sustaining appellee's demurrer to each paragraph of appellant's complaint. The complaint alleges facts showing the age and residence of the plaintiff, and then states that one Samuel Lewis Shank was elected mayor of the city of Indianapolis, on November 8, 1921, for four years beginning January 2, 1922. That he served as such mayor from January 2, 1922, to January 4, 1926. That Joseph L. Hogue was appointed by him as city comptroller. John L. Duvall was elected mayor in November, 1925, and succeeded Shank January 4, 1926. He then appointed William C. Buser as city comptroller, who later resigned. He then appointed Claude Johnson, who also resigned. On September 23, 1927, he appointed Maude E. Duvall, who was comptroller when Duvall, himself, resigned as mayor. On October 27, 1927, Maude E. Duvall, acting as mayor, appointed Ira M. Holmes, to act as city comptroller and on the same date, October

27, 1927, she resigned as mayor. Holmes occupied the office as acting mayor until the following day, October 28, 1927. The city council on October 27, 1927, declared the office of mayor vacant and elected one of their number, Claude E. Negley, as temporary mayor, who ousted Holmes from the city hall by a restraining order issued by the Marion Superior Court, and on November 8, 1927, the city council elected L. Ert Slack, as mayor to fill out the unexpired term of John L. Duvall. The council, in declaring the mayor's office vacant, declared that it had been vacant since September 22, 1927, and that Duvall thereafter was incompetent to appoint any controller or any other city officer. That Duvall, while a candidate for the office of mayor in said city election in November, 1925, violated the Corrupt Practices Act in several particulars. Specific violations were named in the complaint. The complaint alleges that each of the promises made in violation of the Corrupt Practices Act was illegal and fraudulently concealed at said city election. That said electors who voted for said Duvall did not know thereof and did not know that said Duvall was disqualified and ineligible to hold said office. That said Duvall was elected at said election for said office of mayor on the Republican ticket, having received the highest number of votes. That said Duvall, within thirty days after said election, made out and filed with the city clerk a statement as required under the Corrupt Practices Act, and that the city clerk, believing and relying upon said false statement in said written statement, issued a certificate of election to said Duvall, certifying that the said Duvall was the duly elected mayor of the city of Indianapolis, and that said certificate was and is at all times regular on its face. That said Duvall presented said certificate of election to Samuel Lewis Shank, the occupant of the mayor's office, and thereafter, on the same day, said Duvall took and subscribed to the

oath of office of mayor. Said Duvall, after intruding into said office of mayor, and pretending to be qualified to act as said mayor, and wholly without legal authority, attempted to appoint one William C. Buser as city comptroller, and fixed the time of the beginning of the term of said Buser as of January 4, 1926. That said Buser at said time had knowledge that said Duvall was ineligible to the office of mayor and was an intruder therein. That said Buser presented his certificate of comptroller to the relator Hogue, who was the city comptroller, and said Hogue, relying thereon, turned over to the said Buser the office of city comptroller of the city of Indianapolis, in good faith believing that he was surrendering his office to a duly-appointed successor. That said Duvall was disqualified to hold said office of mayor. The complaint further alleges that said Duvall was prosecuted upon an affidavit filed May 17, 1927, in the criminal court of Marion County, for a violation of the Corrupt Practices Act. That said Duvall was tried upon said affidavit by a jury and the jury found him guilty and fixed his punishment at thirty days in the Marion County jail and a fine of $1,000, and found him disqualified to hold the office of mayor of the city of Indianapolis for four years from and after November 2, 1925. That on October 12, 1927, judgment was pronounced by the Marion Criminal Court on said verdict. The relator further alleges that, in so far as said mayoral election was concerned, it was void as to said Duvall, and that no successor was duly elected to succeed Samuel Lewis Shank. That Shank was at all times continuing to be the mayor of said city until his death. And from that time on, relator, who was appointed city comptroller, has been the only legally-appointed city comptroller of said city. That, on the death of Shank, said relator was the only legally-qualified comptroller of said city and ever since has been entitled to act as mayor of said city. On

October 24, 1927, this relator demanded of said Duvall the office of said mayor and that said Duvall refused to surrender said office or the possession thereof. On October 24, 1927, this relator filed an information of *quo warranto* against Duvall, for usurping said office, in the Marion Circuit Court. On November 7, summons was returnable on said complaint and on October 19, 1927, Duvall entered his appearance in said cause. That Duvall, at that time claiming to be the legal mayor of Indianapolis, attempted to and purported to resign as such mayor and surrendered the possession thereof to one Maude E. Duvall. That Maude E. Duvall claimed to be the qualified city comptroller of the city of Indianapolis, under the appointment by said John L. Duvall, of September 26, 1927. That upon said attempted resignation, said Maude E. Duvall claimed that she became acting mayor of the city of Indianapolis. That on October 27, 1927, said Maude E. Duvall, was acting as mayor, and purported to appoint one Ira Holmes as city comptroller. That thereafter said Maude E. Duvall, resigned as acting mayor. On October 27, 1927, the council of the city of Indianapolis attempted and purported to declare the office of mayor vacant and elected one Claude E. Negley to act as mayor *pro tempore* until they should appoint a permanent mayor. On October 28, said Claude E. Negley obtained an injunction against said Ira M. Holmes, enjoining said Holmes from interfering with the possession of said office of mayor by said Negley. That Negley remained in the possession of said office until the 8th day of November, and claimed to be entitled thereto as mayor *pro tempore*. On November 4, 1927, this relator demanded of said Negley the office of said mayor and he refused to surrender. That on November 8, 1927, said common council appointed the defendant, L. Ert Slack, as permanent mayor of the city of Indianapolis. That said Slack

took possession of the same and has at all times held such possession and claims that he is entitled to such office. The relator says that the acts of the common council were each wholly void for the reason as above stated that no vacancy has at any time existed in the office of mayor of the city of Indianapolis. The relator demands that Slack turn over the possession of said office and he declines to do so. The relator demands judgment in the sum of $5,000, and that defendant be ousted from the office of mayor of the city of Indianapolis, and that this relator have possession thereof.

If an information is by a person claiming the office, the facts must be stated showing his title thereto and his eligibility to hold such office. *Reynolds* v. *State, ex rel.* (1878), 61 Ind. 392; *State, ex rel.,* v. *Long* (1883), 91 Ind. 351; *Chambers* v. *State, ex rel.* (1891), 127 Ind. 365, 26 N. E. 893; *Bishop* v. *State, ex rel.* (1898), 149 Ind. 223, 48 N. E. 1038, 63 Am. St. 279, 39 L. R. A. 278; *State, ex rel.,* v. *Ireland* (1891), 130 Ind. 77, 29 N. E. 396.

A person who is not interested in a public office except as the public generally is interested cannot maintain an information to try the title to an office or to oust officers. *State, ex rel.,* v. *Reardon* (1903), 161 Ind. 249, 68 N. E. 169; *Modlin* v. *State, ex rel.* (1911), 175 Ind. 511, 94 N. E. 826, Ann. Cas. 1913C 669; *Reynolds* v. *State, ex rel., supra.*

At the Indianapolis city election of 1925, Duvall received the highest number of votes, a certificate of election was issued to him, and he duly qualified as mayor on January 4, 1926, and Shank relinquished to him said office. Although Duvall's election was subject to contest and his title as evidenced by the certificate of election was defeasible by reason of his ineligibility, nevertheless such election and qualification were sufficient to vest him with color of title to

said office and thereupon terminate Shank's tenure of office within the meaning of the statute prescribing the term of the office of mayor. §10266 Burns 1926; *McGee* v. *State, ex rel.* (1885), 103 Ind. 444, 3 N. E. 139; *DeArmond* v. *State, ex rel.* (1872), 40 Ind. 469; *Couch* v. *State, ex rel.* (1907), 169 Ind. 269, 272, 82 N. E. 457, 124 Am. St. 221; *Landes* v. *Walls* (1903), 160 Ind. 216, 66 N. E. 679.

Joseph L. Hogue was appointed by Shank as city comptroller to serve until his successor was appointed and qualified. He relinquished that office on January 4, 1926, to William C. Buser, upon the presentation by Buser to him of a certificate evidencing the appointment and qualification of Buser as city comptroller by Duvall. Even though subject to attack in a direct proceeding because of Duvall's ineligibility or for any other sufficient reason, the appointment of and qualification by Buser terminated Hogue's tenure of office within the meaning of the Constitution and the statute providing that the city comptroller shall hold office until his successor is appointed and qualified; and Hogue, or any other person claiming the office of city comptroller, was thereupon remitted to litigation against Buser and his successors to establish his claim to title to the office of city comptroller. The complaint expressly shows that Hogue has never taken such action, and the present suit is not tenable. §10295 Burns 1926; *Parmater* v. *State, ex rel.* (1885), 102 Ind. 90, 3 N. E. 382; *McGee* v. *State, ex rel., supra; DeArmond* v. *State, ex rel., supra;* Dillon, Municipal Corp. (5th ed.) §§518, 519; Constantineau, De Facto Doctrine §§346, 347.

Hogue can recover only upon the strength of his own title to the office of mayor and not upon any alleged weakness in Slack's title to said office. *Relender* v. *State, ex rel.* (1898), 149 Ind. 283,

49 N. E. 30; *State, ex rel.,* v. *Wheatley* (1903), 160 Ind. 183, 66 N. E. 684.

Hogue fails to show that he has any interest in the office of mayor here in controversy, or that Slack has intruded into or is claiming the office of comptroller to which relator was appointed. Hence, Hogue has no valid cause of action against Slack. §§1208, 1209, 1212 Burns 1926; *Reynolds* v. *State, ex rel., supra; State, ex rel.,* v. *Wheatley, supra; State, ex rel.,* v. *Tancey* (1903), 161 Ind. 491, 69 N. E. 155; *Wells* v. *State, ex rel.* (1911), 175 Ind. 380, 94 N. E. 321, Ann. Cas. 1913C 86, note. The only office to which Hogue has ever had any title is city comptroller; therefore there is no showing of intrusion or usurpation. See *State, ex rel.,* v. *Tancey, supra.*

Appellant Hogue claims as holding over as comptroller, under Art. 15, §3, of the Indiana Constitution, but he has not been occupying the office or had any connection with its duties since January 4, 1926, when he surrendered the office of comptroller to one Buser. On October 24, 1927, he demanded of Duvall the office of mayor and was refused. He put his claim as resting on his holding the office of comptroller under Mayor Shank, who died more than a year after he had surrendered the office of mayor to Duvall, who had been elected and qualified as his successor.

The constitutional provision that officers shall hold until their successors are elected and qualified, §232 Burns 1926, being Art. 15, §3, of the Constitution of Indiana, requires that the time held over shall immediately follow the expiration of the term of office; that there shall be no holding or occupancy of the office by some one else between the expiration of the term and the time the incumbent holds over under the Constitution.

In *State, ex rel.,* v. *Harrison* (1888), 113 Ind. 434, 16 N. E. 384, 3 Am. St. 663, it is said:

"It adds an additional contingent and defeasible term to the original fixed term, and excludes the possibility of a vacancy."

In *Steinback* v. *State, ex rel.* (1872), 38 Ind. 483, on page 488, the term "qualified" is defined. The court there says:

"The term elected is too well understood in our country to require any definition. The term qualified was not used in its ordinary or popular signification, as possessed of endowments or accomplishments, or intellectual capacity, or moral worth to discharge the duties of an office, but the framers of the constitution intended thereby that a person who had been elected to an office, and had taken the oath of office, and given bond, where a bond is required, was qualified and had the right to assume and discharge the duties of such office. The acts to be performed depend upon the character of the office. If a person has been elected a judge, he is qualified when he takes the oath of office; while officers who are required to give bond and surety have, in addition to taking the oath of office, to give bond with approved security; and when these things have been done, the person elected or appointed has qualified and is an officer *de jure*."

It appears from the allegation of the complaint that Samuel Lewis Shank was elected as mayor of Indianapolis for a term of four years from January 2, 1922, until his successor was elected and qualified. The Indianapolis city election of 1925 resulted in Duvall receiving the highest number of votes and he qualified as mayor on January 4, 1926, and Shank relinquished to him the said office. This puts Shank out of the office of mayor to which he had been elected, and he cannot claim to hold over under the constitutional provision, for reasons above stated. The election of

Duvall was not void. He was duly and legally elected to the office of mayor and qualified and took possession of said office. Of course, the prosecuting attorney had a right to attack his title to the office by *quo warranto* proceedings and any other person who could show a title to the office could contest the title. That is what is being done in this proceeding. The complaint is filed on the relation of one Hogue, and, in order to succeed, he must first show a right or interest in the office himself, pursuant to the statute, §1212 Burns 1926.

The complaint does not show that the relator has any right to the office of mayor of Indianapolis. The facts pleaded show that on January 4, 1926, Samuel Lewis Shank surrendered the office of mayor of the city of Indianapolis and ceased to be mayor from said date until his death. Said Samuel Lewis Shank died on September 24, 1927. The facts pleaded do not show that the election in which John L. Duvall was chosen mayor was a void election. The facts show that when Duvall presented his certificate of election and showed that he had been qualified as required by law, it was the duty of Shank, the incumbent, to forthwith surrender his office to Duvall, and he did so. The facts pleaded show that on January 4, 1926, the relator abandoned the office of comptroller of the city of Indianapolis and was never comptroller thereafter and also show that William C. Buser was appointed and qualified as comptroller of that city from January 4, 1926, and, for a continuous period of approximately twenty months thereafter, he continued to occupy the office of said comptroller. It is admitted by appellant that the said Buser was the *de facto* comptroller from January 4, 1926, for a continuous period of more than twenty months and we hold that the facts alleged show that he was the *de jure* comptroller during said time. See Dillon, Municipal Corp. (5th ed.)

§§518, 519; Constantineau, De Facto Doctrine §§346, 347; *People* v. *Staton* (1875), 73 N. C. 546.

The facts pleaded show laches on the part of the relator in failing to assert any claim to the office of comptroller or the office of mayor for a period of approximately twenty months. *State, ex rel.,* v. *Gordon* (1882), 87 Ind. 171, and cases there cited.

It was not necessary for the appellant in his complaint to allege anything in regard to the title of the defendant, but appellant's complaint does allege facts which show that at the time the city council passed a resolution declaring that a vacancy existed in the office of mayor, such vacancy did exist and it became its duty to fill it; and the complaint alleges that it did so. The section of statute under which said council was required to fill said vacancy is §10276 Burns 1926, which provides that, in case of a vacancy in the office of mayor, the city comptroller, in all cities having such office, shall act as mayor, providing that such officer, while acting as mayor, shall not perform any duties of comptroller, but shall appoint a suitable person to act as comptroller during such time; and, in the event of the death, resignation or disability of said city comptroller, meaning the city comptroller who was acting as mayor, the common council shall designate one of its members to act as mayor *pro tempore* until a special meeting of the council can be held, not less than ten days nor more than fifteen days thereafter, at which meeting the council shall elect a suitable person to fill out the unexpired term of mayor. The allegations show that the common council did designate one of its members to act as mayor *pro tempore* and that, pursuant to the statute, not less than ten days and not more than fifteen days thereafter, it proceeded to elect a mayor to serve out the unexpired term of John L. Duvall. That it elected the appellee, L. Ert Slack, who

proceeded to qualify and is now, and has been ever since he so qualified, acting as mayor and performing the duties of mayor.

From the allegations of the complaint, we hold that he was duly and legally elected according to law to fill out such unexpired term, and is now the legal mayor of said city of Indianapolis.

The trial court did not err in sustaining the demurrer to each paragraph of the complaint. The judgment is affirmed.

Myers, C. J., concurs in the result reached.

Travis, J., dissents.

Martin, J., not participating.

DISSENTING OPINION.

TRAVIS, J.—I believe the judgment should be reversed. The first question to decide is, was John L. Duvall elected to the official office—mayor? I fail to find in the information an allegation that Duvall was elected at the election November 3, 1925. If the decision is that he was so elected, the case is ended. If he was not elected to the office of mayor, the inquiry then is concerning the claims of relator Hogue. Relator's claim is founded upon his information, the details of which are given here quite fully, and somewhat in the language of the information.

The information: Samuel Lewis Shank was elected mayor November 8, 1921. He qualified by oath, began his official term at noon January 2, 1922, and served the full term, which ended at noon January 4, 1926. After entering upon the duties of the office, Mayor Shank appointed this relator city controller (comptroller), who qualified for and possessed the office until noon, January, 4, 1926.

At the city election, November 3, 1925, John L. Duvall who was a candidate for the office of mayor, received a higher number of votes than his one opponent, by a majority of 8,974 votes. Within thirty days after the day of election, Duvall filed with the city clerk a statement in writing, subscribed and sworn to by him, which set forth all moneys, and other valuable things contributed, expended, or promised to aid and promote his candidacy for the office of mayor. Upon presentation of the statement of promises and money expended, to the city clerk, that official issued to Duvall a certificate of election, which the newly-elected Mayor Duvall presented to Mayor Shank at noon January 4, 1926; and Shank surrendered the office, together with all books, records, and papers belonging thereto. The same day that the new mayor took the office, he appointed one William C. Buser to the office of city comptroller and fixed the time of the beginning of the term as January 4, 1926. Buser presented a certificate of his appointment as comptroller to this relator, and relator surrendered the office to the new appointee, believing that the certificate was valid. Buser, at the time that he presented his certificate of appointment to relator, had knowledge that Duvall was ineligible to the office of mayor and that he was an intruder therein.

Duvall, prior to the day of the general election, did unlawfully, directly and indirectly offer and give bribes, threats and rewards to secure his election, to wit: He offered and promised one William H. Freeman to appoint him as a member of the board of works, if he became mayor; he offered and promised Harvey Bedford to appoint him superintendent of parks, if he became mayor; he offered and promised one George Elliott to appoint him a member of the board of park commissioners, if he became mayor; he offered and promised George S. Henninger, Oren E. Davis, and Ray Millikan, that he

would, if elected mayor, appoint members of an organization, then and there represented by them, to fill eighty-five per cent. of the positions which he could fill by appointment as mayor. Freeman, Bedford, Elliott, Henninger, Davis and Millikan, were each of them, at the time such promises and offers were made, duly-qualified electors at the regular city election. The promises and offers so made, were for the purpose of inducing and procuring the persons named as promisees to vote, work for and aid Duvall to secure the election as mayor. On or about November 2, 1925, Duvall unlawfully offered and promised one William H. Armitage that, if elected mayor, Armitage might name two members of the board of works, and one person for city civil engineer; and Duvall promised to appoint the men so named by Armitage to such public positions when he became mayor; the offer and promise so made to induce Armitage to vote, aid and work for Duvall's candidacy for the office of mayor; and as a further consideration for the promise made by Duvall, Armitage agreed to and did pay to Duvall $10,000. Armitage was, at the time the promises were made, a qualified elector at the regular city election. The statement of money expended and promises made by Duvall in aid of his election so filed with the city clerk, falsely and fraudulently represented that the only promise he made to aid or promote his candidacy for and his election to the office of mayor, was that prior to the time of his becoming a candidate he agreed to two recommendations for positions, which were cancelled before he became a candidate to the office; all of which representations were false, and known to be false by Duvall at the time he so made them. The city clerk at the time he issued to Duvall the certificate of election, believed and relied upon the false and fraudulent statement. When Mayor Shank surrendered the office, and the books and papers pertaining thereto, to Duvall,

he did so believing Duvall to be duly and legally qualified to take and hold the office. So with relator, when he relinquished the office of comptroller to Buser, he did so believing and relying upon the appointment of Buser by a legally-qualified mayor, wholly without knowledge that Duvall was disqualified to hold the office of mayor, and unauthorized to appoint Buser city comptroller, and that the appointment of Buser was void as to the relator.

May 17, 1927, an affidavit was filed in the Marion Criminal Court which charged that Duvall violated the Corrupt Practices Act. The charge was based upon the alleged unlawful promise to William H. Armitage hereinbefore mentioned. Duvall pleaded not guilty. The trial resulted in a verdict of guilty. The judgment was against Duvall of a fine and imprisonment. Relator's first knowledge that Duvall was not qualified to hold the office of mayor was his conviction of the criminal charge of violation of the Corrupt Practices Act. October 27, 1927, Duvall, then claiming to be the legal mayor, attempted to and purported to resign, and in form did resign as mayor, and abandoned the office, and surrendered the possession of the office to one Maude E. Duvall, since which time he does not claim the office of mayor. At the time of such attempted resignation, Maude E. Duvall claimed to be the duly-appointed and qualified city comptroller. She was pretending to act as such officer under an alleged appointment by John L. Duvall, made September 26, 1927. Upon such attempted resignation by John L. Duvall as mayor, Maude E. Duvall claimed that she became acting mayor. She continued to occupy the office of acting mayor by virtue of such pretended appointment, and until she attempted to resign. The same day, to wit: October 27, 1927, while pretending to act as such acting mayor, she attempted and purported to appoint one Ira M. Holmes

to the office of city comptroller. Holmes immediately purported to qualify as such city comptroller. He claimed that office until the purported resignation of Maude E. Duvall as acting mayor on the same day. Upon her purported resignation of the office of acting mayor she surrendered possession of the office of mayor to Holmes, since which act she had not and does not now claim the office of mayor. Holmes claimed he was entitled to act as mayor, and attempted and purported to qualify as such, took possession of the office and retained the same until he was restrained from so doing by an order made by the Marion Superior Court October 28, 1927. The same day, to wit: October 27, 1927, the common council by resolution, attempted and purported to declare the office of mayor vacant, and attempted and purported to elect, choose, and appoint one Claude E. Negley, who then was a member of the common council, to act as mayor *pro tempore*, until the common council should choose a permanent mayor, and it then attempted and purported to fix November 8, 1927, as the date for choosing such permanent mayor. Negley took possession of the office of mayor October 28, 1927, and held it until November 8, 1927, by virtue of his election as mayor *pro tempore* by the common council. October 31, 1927, the order which restrained Holmes from holding the office was by the court continued as a temporary injunction against Holmes, and he therefore publicly abandoned his claim to the office of mayor, and does not now claim the same.

Relator, October 24, 1927, and before the attempted resignation of Duvall, demanded of Duvall the office of mayor together with the books and papers belonging thereto. Duvall refused the demand. The same day this relator instituted proceedings in the Marion Circuit Court by information, of the nature of the suit at bar, against Duvall for usurpation of the office of mayor.

Duvall appeared by attorney as defendant. This suit is now pending.

Relator, November 4, 1927, demanded the office of mayor and the books and papers belonging thereto from Negley. The demand was refused, and this relator was wrongfully kept out of possession of the office from October 28, 1927, to November 8, 1927.

Relator, November 4, 1927, notified the common council, by letter to the president thereof, of relator's claim to the office of mayor.

November 8, 1927, the day fixed by the common council to elect a mayor, it attempted and purported to elect, choose, and appoint the defendant, L. Ert Slack, as permanent mayor to fill the alleged vacancy in that office. Immediately after such election defendant attempted and purported to qualify as such mayor, Negley surrendered possession of the office to defendant, and defendant took possession of the office of mayor, and has at all times since held such possession, and claims and pretends to be entitled to the office.

Relator, November 10, 1927, demanded of defendant the office of mayor and possession of the books and papers belonging thereto. The demand was refused, and defendant wrongfully keeps relator out of possession of the office, and the emoluments thereof.

It is pleaded that the actions of the common council in attempting and purporting to elect Negley and defendant Slack were void, and that no vacancy existed at any time in the office of mayor; that Duvall by reason of his unlawful acts, was disqualified to hold the office; and that the general city election November 3, 1925, in so far as it affected the office of mayor was void; and that Duvall was not elected at that election, wherefore no successor was elected or qualified to succeed Mayor Shank, and Shank held over until his death on September 24, 1927, when relator as the only legally appointed city

comptroller succeeded Shank as acting mayor, and is entitled to the office of mayor. The second paragraph of information alleges the same facts as are alleged in the first paragraph, except that the second paragraph alleges Shank on January 4, 1926, had served four years as mayor, and was therefore ineligible (§10266 Burns 1926) to continue to hold office after the expiration of his fixed statutory term, and that relator as city comptroller on January 4, 1926, was entitled to act as mayor.

The ultimate question to be answered is, had the relator at the time of bringing this action, the legal right to be the acting mayor, clothed, by virtue of the law, with all the necessary elements of that office except the actual physical possession of it, which in legal effect made him such officer *de jure?* The element for consideration, in answering the question affirmatively, depends upon whether or not one who pretends to be an officer under a bare color of title, and who has been recognized as such official generally, may, in executing one of the recognized and legal duties of the office which he pretends to hold, appoint another to an appointive official position, which appointee, by virtue of such appointment, is an official *de jure.*

It is well pleaded that Samuel Lewis Shank was legally elected to the office of mayor in the city election in 1921 and took possession of that office and acted as that official, after having legally taken the oath of office, and after having complied with all other legal requirements; and that on January 2, 1922, he appointed relator to the official position of comptroller. Mayor Shank's term of office was for four years or until twelve o'clock noon January 4, 1926. His term and tenure of office was for the statutory fixed term, and until his successor shall have been elected and qualified. Art. 15, §3, Constitution. §§232, 10266 Burns 1926. The tenure of the office of comptroller held by the relator under

appointment by Mayor Shank is for a period of time until his successor is appointed and qualified. §10295 Burns 1926.

The General Assembly by its enactment limited the term of office of Mayor Shank to four years, and, in addition, that he would be ineligible to hold the same elective office more than four years in·any period of eight years. This inhibition is the basis for relator's second paragraph of information. The ineligibility of a mayor to succeed himself in office ought to be construed that he shall not be eligible to re-election, as the statute plainly provides, but that this ineligibility has no restraining force upon the provision earlier in this section of the statute, that the mayor shall continue to serve until his successor is elected and qualified. A limited term of office, as in this case for four years, or a limitation upon the one term succeeding another for the same person in the office, does not bar the mayor from holding over, after the four-year term has expired, in his same official capacity until his successor is elected and qualified. §10266 Burns 1926. And it follows that Mayor Shank was the legal incumbent of the office, unless he had been legally superseded by one, not disqualified for holding the office, and who had been legally elected to succeed him. *Taylor* v. *Sullivan* (1891), 45 Minn. 309, 47 N. W. 802, 11 L. R. A. 272, 22 Am. St. 729; *Selby* v. *City of Portland* (1886), 14 Ore. 243, 12 Pac. 377, 58 Am. Rep. 367.

By authority of the Constitution, Art. 15, §3, Mayor Shank, at the end of his four-year term of office, unless some person was legally eligible, and had been legally elected, and had legally done all the acts to qualify him to take the office in succession, was and continued to be, by that mandate, the mayor. The period from the end of his statutory four-year term of office until he was legally succeeded (the period of his holding over in

office) was legally as much a part of his term of office as the four years statutory period itself; *Kimberlin* v. *State, ex rel.* (1891), 130 Ind. 121, 125, 126, 29 N. E. 773, 30 Am. St. 208, and note; *Carr* v. *Wilson* (1889), 32 W. Va. 419, 431, 9 S. E. 31, 3 L. R. A. 64; *City of Grand Haven* v. *Guaranty Co.* (1901), 128 Mich. 106, 87 N. W. 104, 92 Am. St. 446; *State, ex rel.,* v. *Levy Court of Newcastle County* (1927), 140 Atl. (Del.) 642; *State, ex rel.,* v. *Levy Court of New Castle County* (1927), 140 Atl. (Del.) 642, and Mayor Shank was, as such official, during that period of time of his term and tenure of office, to wit: from the end of his prescribed statutory term until he was legally succeeded in office, the actual legal and official mayor—he was mayor *de jure*. *Kimberlin* v. *State, ex rel., supra,* 125; *Commonwealth, ex rel.,* v. *Hanley* (1848), 9 Barr. (Pa. St.) 513; *State, ex rel.,* v. *Howe* (1874), 25 Ohio 588, 596; *People, ex rel.,* v. *Edwards* (1892), 93 Cal. 153, 156.

In many states, the right of an official to hold over after his stated term of office has expired, is given by statute only. In Indiana, such right in relation to the mayor of a city is given by both the Constitution and by the statute. By virtue of these laws, the weight of authority, considering the stand taken by this court in earlier opinions, is that an officer *de jure*, who holds over after the expiration of the term fixed by law, when there is no one legally qualified to succeed in office, continues in such official position as the *de jure* officer. *State, ex rel.,* v. *Harrison* (1888), 113 Ind. 434, 442, 16 N. E. 384; *People, ex rel.,* v. *Edwards, supra; State, ex rel.,* v. *Bulkeley* (1891), 61 Conn. 287, 358; *Soucy* v. *McCracken* (1886), 21 Ill. App. 370; *State, ex rel.,* v. *Smith* (1895), 94 Iowa 616; *State, ex rel.,* v. *Howe, supra; Commonwealth, ex rel.,* v. *Hanley, supra;* see *State, ex rel.,* v. *Lusk* (1853), 18 Mo. 333; *State, ex rel.,* v. *Boyd* (1891), 31 Nebr. 682;

*State, ex rel.,* v. *Compson* (1898), 34 Ore. 25; *State, ex rel.,* v. *Meilike* (1892), 81 Wis. 574.

It is pleaded: that Mayor Shank, at the end of his statutory term of office of four years, to wit: January 4, 1926, surrendered the office of mayor, together with all books, records and papers which belonged thereto, to John L. Duvall, after Duvall had concealed from Mayor Shank, that he was disqualified to hold that office; and that Duvall had procured, through misrepresentation and fraud, and presented to Mayor Shank, a certificate of election to the office of mayor, regular on its face. If Duvall was, on January 4, 1926, disqualified from holding the office of mayor for the term which should have begun on that date, the act of Mayor Shank, surrendering it to Duvall, under the circumstances pleaded, and the act of Duvall, holding possession of the office by virtue of Mayor Shank's surrender of it, gave him no legal right thereto, which was efficacious to oust Mayor Shank from holding over, or to reduce in degree his title to the office. The surrender of the office, under the circumstances, did not constitute either a formal resignation or an abandonment of the office. To quit the office, Mayor Shank must have done it formally by resignation, informally by abandonment, or by death; he therefore, having released the possession of the office, and having surrendered it, under the circumstances as pleaded, under the premise that Duvall was disqualified for holding the office, was mayor by legal right, and that as the officer *de jure*. *Hamlin* v. *Kassafer* (1887), 15 Ore. 456, 3 Am. St. 176, 179.

It may not be inferred from Mayor Shank's action in surrendering the office to Duvall, that he intended to surrender his right and title to hold over as mayor by virtue of the Constitution, where Mayor Shank had every reason to believe from Duvall's certificate of election, that Duvall was not disqualified for holding that office.

Upon the pleadings and the law, Mayor Shank was the only one who was legally entitled to hold the office of mayor after the end of his term, and until his death. *State, ex rel.,* v. *Levy Court of New Castle County, supra.*

The death of Mayor Shank September 24, 1927, is the only fact pleaded which determined his tenure of office. Had he been in possession of the office at the time of his death, the relator (not having been removed from the office of comptroller by Mayor Shank, but holding the office and in possession thereof at the time of Mayor Shank's death) would have succeeded to that office of acting mayor. There would have been neither a hiatus nor interregnum between the ending of the tenure of one, and the beginning of the tenure of the other. The act of Mayor Shank in surrendering the office to Duvall had no virtue to effect the removal of the relator from the office of comptroller. That official position he held *de jure* until he was removed from office as provided by law, or until he resigned the office or abandoned it, or quit it by death. The fact that relator held his office by appointment gave no ground for a reason to the conclusion, that his right to the office was any lower in degree than was Mayor Shank's right to the office of mayor. The reason in the one instance is reason in the other. If Mayor Shank held the office *de jure*, although without possession thereof, the rule must extend to the comptroller that he held the office of comptroller *de jure*, although not in the possession thereof, until someone qualified to hold the office of comptroller was legally appointed to take that office. Mayor Shank having died, being at the time mayor *de jure*, and the relator at the same time being comptroller *de jure*, he succeeded Mayor Shank as acting mayor. Relator was at the time, the only person legally qualified under the statute to succeed to the office. And by virtue of the statute, he did succeed to the office, entitled to retain the same until his successor as mayor

was legally elected and qualified; unless Duvall, acting as mayor by virtue of his possession of the office gained from Mayor Shank under the circumstances as pleaded, might legally appoint one to the office of comptroller, who by virtue of such appointment is an official *de jure.* This brings us to the final element for consideration.

In considering this second and last element of the case, it is premised that Duvall had no legal title to the office of mayor to succeed Mayor Shank, and that he had no legal right to the possession of the office, and that he had no legal right to execute the duties of the office. The principle is recognized generally, that a candidate for a public office, who receives a plurality of the votes cast at the election, is not elected to the office, if he is at the time disqualified for holding the office. (Art. 2, §6, Constitution). We are not here dealing with the question of eligibility as defined by the Constitution. (Art. 2, §10, Art. 7, §16, Constitution). *People, ex rel.,* v. *Lynch* (1926), 217 N. Y. Supp. 729, 128 Misc. Rep. 36. In Indiana, no person shall be deemed elected to any elective office, or enter upon its duties, until he shall have filed a true statement of his campaign expenses and promises. An untrue statement does not satisfy the statute. The thought need not be carried further. §7668 Burns 1926. Duvall's power to execute the duties of the office, brings into play the rules of law which determine the answer to the question. As a general rule of law, one who is disqualified for holding office for the term, even though he received a plurality of the votes at the election, is, as a matter of course, disqualified to perform any official act, no matter how he may insinuate himself into the office, whether it be by fraud, force of arms, by threats, or under color of right under and by authority of a statute, which, after the election, has been declared to be unconstitutional, even though he has been exercising the functions of the

office. *People, ex rel.*, v. *Staton* (1875), 73 N. C. 546. The act of one who intrudes illegally into an office, or of one who usurps the office without color of right, but who has been recognized as such officer for a sufficient length of time to induce third persons to deal with him without suspicion, is legal in so far as it may affect the public whom he represents, and third persons with whom he deals officially, and who have an interest in or who may be injuriously affected by the act done. One, in relation to such acts, is legally an officer *de facto*. This rule of law originated in England, and is recognized in the jurisprudence of this country, without exception. The rule is not based upon sound reason. It is not subject to proof by logic. It is a rule based upon expediency, policy, and necessity, to prevent mischief being extended any further than necessary by one who has no legal right to perform the act that he has done. The public is interested only so far as its rights depend upon the acts of one who has so intruded into the office. Third persons are interested only in so far as their legal and contractural rights are not interfered with by the acts of the intruder. The public has a vital interest in all public officials, which is, that they shall be qualified for holding the offices to which they have been legally elected or appointed, and that they either have been elected by legally qualified electors, or appointed by legally-elected and legally-qualified officials. *People, ex rel.*, v. *Murray* (1878), 73 N. Y. 535; *Harbaugh* v. *Winsor* (1866), 38 Mo. 327; *Shelby* v. *Alcorn* (1858), 36 Miss. 273, 72 Am. Dec. 169, and note.

It is unnecessary to extend this harsh rule to any other acts than to those of necessity, when done by one acting as an officer, without the sanction of the law. The surrender of the office of comptroller to Duvall's appointee Buser, was under circumstances not unlike those under which Mayor Shank surrendered the office

of mayor to Duvall. Buser brought to relator his certificate of official appointment, regular upon its face. Relator, relying upon the validity of the appointment of Buser to succeed him, surrendered the office to Buser. Relator, in so doing, lost no right under the Constitution or statute to continue in office. The fact that he was thus overreached does not make his act in surrendering the office either an abandonment of the office or a resignation.

The public or third persons are not concerned whether relator or Buser was comptroller, as to which one of them performed the ministerial and official acts which pertained to the office. Each of them was presumed to be competent to act as such officer. The public and third persons are interested in the acts of the comptroller in so far as his acts affect the public whom he represents, and third persons, with whom he deals officially, to the same extent as they are interested in the acts of the mayor; and such acts will of necessity be held binding. The comptroller, as to such acts, is held in law to be the comptroller *de facto*. The fictitious legal garment which protects the official acts of one, though not legally entitled to hold the office and to perform the duties which pertain thereto, through necessity and upon the principle of protecting the interests of the public and third persons, is not efficacious in protecting the right of one to hold the office when challenged at law by an action in the nature of *quo warranto*. *Powers* v. *Commonwealth* (1901), 110 Ky. 386, 61 S. W. 735, 63 S. W. 796, 53 L. R. A. 245, 247.

If the rule of law, which makes binding certain acts performed by one who pretends to be the public officer, creates him an officer *de facto* in relation thereto, the rule may not be extended when not necessary to protect the public or third persons, and it is not necessary to extend the principle to give a greater than a *de facto* life to the

act of Duvall in appointing Buser comptroller—the acts of Buser as comptroller are good only to the extent they affect the public and third persons.

The public is interested in the integrity of the government. To nurture and preserve that element of virtue, the public will not countenance usurpation of office. One who is not disqualified for holding an office, and who has been legally elected or appointed thereto and who has done all the acts to qualify, as taking the oath of office and giving bond, is presumed to be competent and honest; this presumption benefits one not legally elected and who is disqualified for holding the office, which concern those acts necessary to be upheld under the rule of necessity.

Duvall intruded into the office of mayor. He held possession of the office and performed the acts necessary to be done, without right. He could confer no greater title to official office than he himself held. His appointment of Buser was without right. Buser was not legally clothed with title to the office of comptroller by any act of Duvall. *New York* v. *Flagg* (1858), 6 Abb. Pr. (N. Y.) 297; *People, ex rel.,* v. *Anthony* (1875), 6 Hun. 142; *People, ex rel.,* v. *Stevens* (1843), 5 Hill (N. Y.) 616. It follows that Duvall could not confer a *de jure* title to the office of comptroller upon either Maude E. Duvall or Ira M. Holmes, that either of them might succeed Duvall as acting mayor.

The relator claimed the office of acting mayor. He made demand for the office upon Duvall. He had not abandoned the office of comptroller, or the right as that official to succeed the mayor as acting mayor. He was the *de jure* comptroller, by virtue of which he was entitled to the office upon demand from Duvall. Duvall's resignation did not create a vacancy in the office of mayor such as is contemplated by the statute. §10276 Burns 1926. The common council elected the defen-

dant to the office of mayor. There being a comptroller legally qualified to succeed the mayor as acting mayor, the common council lacked jurisdiction to elect. Its action electing the defendant Slack was void.

Relator has pleaded that Duvall had been charged by affidavit with having committed a crime, which affidavit had been filed in the Marion Criminal Court, to which charge Duvall pleaded not guilty; that the verdict of guilty, after trial, was returned, and judgment was rendered upon the verdict. The evidence to prove the allegation that Duvall was adjudged guilty of the crime alleged to have been pleaded against him is not competent. The rule of evidence is well founded, that a verdict or judgment in a criminal cause is not competent evidence in a civil cause of the fact upon which the judgment was founded. Even though the essential elements of the crime as charged in the criminal cause are pleaded in the case at bar, the judgment in the criminal cause may not be used as evidence to prove the allegation of disqualification here. *Montgomery* v. *Crum* (1928), 199 Ind. 660, 161 N. E. 251; Starkie, Evidence (8th Am. Ed.) 330-333; Lewis' Greenleaf, Evidence §537; *Carlisle* v. *Killebrew* (1889), 89 Ala. 329, 334. It must follow that, the verdict and judgment in the criminal cause being incompetent as evidence in this case, the record which preceded the verdict and judgment, and upon which they relied, are not competent as evidence to aid in proof of the alleged fact that Duvall was disqualified for holding the office of mayor.

Relator grounds his first knowledge of Duvall's disqualification upon his conviction. It is not necessary, to uphold a judgment in relator's favor, that his knowledge of disqualification and his move to oust this defendant rest upon the fact of the conviction or the time of such conviction. From facts pleaded, relator had every reason to believe that Duvall had been legally

elected, and that he was qualified for holding the office. Under such situation, the intention of relator to abandon the office may not be implied or inferred. *State, ex rel., v. Levy Court of New Castle County, supra.* See *Selby v. City of Portland, supra.* It is unnecessary to use the record, verdict or judgment in the criminal cause against Duvall, to establish the fact of his disqualification and the time of the beginning of such disqualification. If Duvall was disqualified by reason of a conviction of guilt, and not until then, he was mayor *de jure* until such time, and relator has no claim to the office. The theory of the cause of action is that Duvall was disqualified for holding the office before the election.

The second paragraph of the information is predicated upon a construction of the Constitution (Art. 2, §6, §94 Burns 1926), and the statute (§10266 Burns 1926) that Mayor Shank's tenure and right to hold the office of mayor was limited to four years, under all conditions. I think this theory is contrary to recognized law of the case, which is found in the cited cases. The second paragraph of information does not state a cause of action. The first paragraph of information states a cause of action; the demurrer to it ought to be overruled.